The PEOPLE of the State of Colorado, Petitioner,

v.

Russell S. RATH, Respondent.

No. 99SC916.

Supreme Court of Colorado, En Banc.

April 8, 2002.

Rehearing Denied April 29, 2002.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, CO, Attorney for Petitioner.

David S. Kaplan, Colorado State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

The People sought review of the court of appeals' judgment reversing the defendant's convictions for first degree sexual assault and second degree kidnapping. The court of appeals found that the trial court abused its discretion in admitting evidence of two prior instances of uncharged misconduct by the defendant, involving two other young women, primarily because the defendant conceded he was the person who gave the victim a ride on the day in question and because it considered the other acts insufficiently similar to the current charge. We hold that the trial court did not abuse its discretion in admitting the evidence of these other acts pursuant to CRE 404(b), and therefore we reverse the judgment of the court of appeals and remand with instructions to reinstate the defendant's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The charges against the defendant arose from the alleged rape of fifteen-year-old T.C. The prosecution's theory was that just before noon on October 18, 1995, while walking home from school on a rural mountain road in Jefferson County near Nederland, the victim was offered a ride by the defendant, taken to a secluded dirt road, dragged down a hillside, and raped by him. The prosecution presented its case at trial largely through the testimony of the victim; relatives, police, and hospital personnel to whom she reported the assault; and coworkers of the defendant to whom he had given contradictory accounts of the incident. The prosecution also presented the testimony of four other women, each of whom was approached on a public street by the defendant, offered a ride, taken to a secluded place, and allegedly subjected to some form of attempted or completed sexual assault. Although the defendant did not testify at trial, his contention that he had merely given the victim a ride and that she was a "pathological liar," who fabricated the sexual encounter to get attention from family members, was presented through cross-examination, defense witnesses to the lack of corroborating physical evidence, and his counsel's opening and closing statements.

As the only admitted witness of the attack, the victim provided the only first-hand testimony about the details of the currently charged assault. She testified at trial that she accepted the defendant's offer of a ride to a point near her home. Upon arriving there the defendant refused to stop, saying that he needed to go to the store and would then take her back to where she wanted to go. Instead of going to a store, however, the victim testified that the defendant took her to a secluded dirt road where he stopped the vehicle and told her that he wanted to show her something in the woods. While she at first refused to get out of the truck, she eventually relented, whereupon the defendant physically dragged her down the adjacent hillside and forcefully sexually assaulted her by vaginal intercourse.

Among other details, she testified that the defendant removed all of their clothing except his shirt and commented during the assault that she had a "nice mole" on her leg. She also testified that following the assault, she accepted a ride from the defendant to a point near her destination where he apologized for his conduct, saying that next time he would not do this sort of thing, and allowed her to leave. After walking home, she vomited and immediately undressed to shower, finding a twenty dollar bill in her pant leg that she did not have before the assault. After showering, she called family members and eventually the police.

The subsequent emergency room examination produced no physical evidence of sexual assault. Similarly, the defense produced evidence indicating that the tire tracks found on the road near the scene identified by the victim did not match the tires on the defendant's truck at the time the police made contact with him several weeks later and evidence challenging the feasibility of the victim's time estimates. There was, however, bruising on the victim's shins where she claimed the defendant sat while pulling off her clothing and an indentation on her abdomen that could have been caused by weight pressing against her cigarette package.

The prosecution also presented the testimony of the four women who claimed to have been picked up and taken to a secluded location during a ten-month period in 1981–82, when they were between twelve and twenty years old, by someone later identified as the defendant. Although the details of the incidents varied, each began with the offer of a ride from the defendant, which the young women accepted either voluntarily or as the result of threats, followed by a drive to a secluded location and some indication by the defendant that his intent was to have sexual relations. In two of the cases, the women were actually sexually assaulted by penetration; in a third case the woman, L.L., testified that the defendant physically forced her into the back of his camper, climbed on top of her, and fondled her breasts, until her resistance and crying led the defendant to let her go to find her own way home; and in the last case, the twelve-year-old girl, to whom the defendant had given five dollars to allow herself to be photographed, fled when he crawled into his truck bed and enticingly invited her to join him to see his camera.

In three of the cases, the defendant showed the women a camera and either took photos or described his interest in taking photos of young women and either gave the young women a small amount of money as an enticement or left a small amount of money with them after the assault. In the two cases in which the defendant was able to complete the sexual penetration (one by vaginal intercourse and the other by forced fellatio), the defendant removed all of his clothing but his shirt and managed to partially or completely disrobe his victim, commenting about some physical feature that became visible—in one case a scar and the other the woman's "fuzzy," unshaved legs. After each completed assault, the defendant was conciliatory or matter-of-fact about doing this sort of thing and offered to drive the victim where she wanted to go.

The jury found the defendant guilty of both second degree kidnapping and first degree sexual assault, for which he was sentenced to concurrent terms of sixteen and eight years, respectively. On direct appeal, the court of appeals reversed, holding that although evidence of two of the prior sexual transactions involving the defendant were properly admitted, the trial court abused its discretion in admitting the other two. It held that the admission of the incidents involving the women identified as L.L. and P.B., in which the encounters ended short of sexual penetration, was error because they were not related to the occurrence of sexual intercourse, which it considered the only "contested" issue at trial, and because they were not "sufficiently substantially similar [to the current charges] to be introduced under CRE 404(b) and § 16–10–301, C.R.S.1998." [1] *People v. Rath*, No. 96CA1773, slip op. at 1 (Colo.App. June 3, 1999).

## II. ADMISSIBILITY OF UNCHARGED MISCONDUCT EVIDENCE

The admissibility of evidence of uncharged criminal misconduct is expressly limited by

---

1. We granted the People's petition for certiorari on the following question:

    Whether the court of appeals erred in holding, based on its application of section 16–10–301, 6 C.R.S. (1999), and CRE 404(b), that the trial court abused its discretion and committed reversible error in admitting prior act evidence relating to victims L.L. and P.B.

    We denied the Defendant's cross-petition for certiorari on the following two issues:

1. Whether the trial court committed reversible error when it permitted the prosecutor to introduce "similar" transaction evidence regarding J.H. and T.C. while was stale, dissimilar, irrelevant, and unduly prejudicial.
2. Whether Defendant was erroneously deprived of access to the department of social services records related to the alleged victim.

the Colorado Rules of Evidence.[2] According to CRE 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that character on a particular occasion. The rule is in accord with the long-standing policy of the English and American law of evidence that when evidence is admitted for this purpose, which is sometimes characterized as the propensity of the accused to commit crime, even though it may be logically relevant in some measure, the prejudicial effect of the evidence always outweighs its probative value, and it is, for that reason, always inadmissible. 1A Wigmore, *Evidence* § 58.2, at 1212 (Tillers rev. 1983). When offered for any other purpose, however, the evidence is not necessarily barred. The rule enumerates several examples of reasons for which evidence of other crimes may be admissible. "As the rule indicates, there are numerous other uses to which evidence of criminal acts may be put, and those enumerated are neither mutually exclusive nor collectively exhaustive." 1 Charles T. McCormick, *McCormick on Evidence* § 190, at 659 (John W. Strong, 5th ed. 1999).

■ In order to be admissible, evidence must be relevant; and unless otherwise provided by constitution, statute, or rule, all relevant evidence is admissible. CRE 402. Evidence is relevant, in the logical sense, as long as it is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; see *People v. Carlson*, 712 P.2d 1018, 1021–22 (Colo.1986). Even logically relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403; see *Spoto v. People*, 795 P.2d 1314, 1318 (Colo.1990).

■ Evidence of other, uncharged crimes may therefore be admissible if, but only if, it is logically relevant for some reason apart from an inference that the defendant acted in conformity with a character trait, and if the probative value of the evidence for that other reason is not substantially outweighed by the other policy considerations of Rule 403. This court has previously considered the relevancy of other-crimes evidence within the scheme of the rules and has analyzed the requirements of CRE 401–404 in four parts. *Spoto*, 795 P.2d at 1318. First, the other-crimes evidence must be offered as relating to a material fact.[3] *Id.* Second, it must be logically relevant by tending to make that material fact more probable or less probable. Third, its logical relevance must be independent of the intermediate inference prohibited by CRE 404(b), that is, the evidence must be probative for some logical reason other than "that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character." *Id.* And fourth, the probative value of the evidence for that other reason may not be substantially outweighed by the danger of unfair prejudice caused by admitting the other-crimes evidence. *Id.*

In considering the effect of CRE 404(b) on the admissibility of other-crimes evidence, we have also emphasized that "[t]he basic rea-

**2.** Prior to the adoption of the rules of evidence, the Colorado General Assembly had made clear by statute that evidence of other criminal transactions would be admissible in prosecutions for sexual offenses for the same reasons it was admissible in prosecutions for other offenses. *See* § 16–10–301, 8A C.R.S. (Supp.1995)(substantially amended effective July 1, 1996, *see* ch. 280, sec. 21, 1996 Colo. Sess. Laws 1578, 1589). Whether or not the statute would have permitted other-crimes evidence in prosecutions for sexual offenses even more liberally than CRE 404(b), *see Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979); *People v. Opson*, 632 P.2d 602 (Colo.App. 1980), apart from separately requiring a prima facie case of the charged offense (which is not at issue on this appeal), nothing in the statute purported to exclude evidence that would otherwise be admissible under the rule, nor has such a suggestion been made by the parties to this appeal. It is enough therefore that the district court did not abuse its discretion in admitting the other crimes evidence at issue here pursuant to the Colorado Rules of Evidence.

**3.** Although the concept of materiality no longer has independent significance in the scheme of the rules, and is instead subsumed within the notion of logical relevance, *see* CRE 401, we have found it helpful in emphasizing the obligation of the prosecution to offer (and the court to admit) other-crimes evidence only for specific purposes, to distinguish the two concepts.

sons for excluding other-crime evidence were set forth in *Stull [v. People]*, 140 Colo. 278, 344 P.2d 455, and these reasons are no less applicable today than they were prior to the adoption of the Rules of Evidence." *People v. Garner*, 806 P.2d 366, 372 (Colo.1991). Rule 404(b) is in accord with the long-accepted proposition that an inference of specific conduct drawn from evidence of criminal character is never sufficiently probative to be admitted to prove the accused committed a particular crime. *See Spoto*, 795 P.2d at 1318. The inherent and universally recognized danger that evidence of uncharged misconduct will influence a jury to convict for an improper and unfairly prejudicial reason always serves as a strong counterweight to any probative value it may have.

We have recognized, however, that with the adoption of the rules of evidence, the analysis of the admissibility of such evidence has been significantly altered, making it admissible in some cases in which it previously might have been excluded. *Garner*, 806 P.2d at 370. For example, the prosecution's burden of showing that the defendant actually committed the uncharged crime or act, which is required for its admission, has been reduced. *Id.* (holding that the former clear-and-convincing-evidence standard of *People v. Botham*, 629 P.2d 589 (Colo.1981), has been supplanted by the preponderance-of-the-evidence standard dictated by CRE 104(a)). Similarly, the inclusionary formula of the rules of relevancy, permitting the admission of evidence *unless* its probative value is *substantially outweighed* by the danger of unfair prejudice, creates a rule more favorable for admission. *See id.* at 370, 373 n. 5 (noting that the balancing test of CRE 403 has effectively overruled the pre-rules formulation of *People v. Honey*, 198 Colo. 64, 67, 596 P.2d 751, 754 (1979), which inverted the policy choice and required the exclusion of other-crimes evidence unless its probative value outweighed its prejudicial effect); *see generally* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 2:31 (2001) (discussing change under Fed.R.Evid. 404(b) to inclusionary view).

■ Perhaps most significantly, to the extent that the law in this jurisdiction had come to exclude evidence of other crimes unless it was offered for and met the strictures of certain narrowly circumscribed categories, *see, e.g., Honey*, 198 Colo. at 67–68, 596 P.2d at 753–54, the rule is more open to general considerations of relevance. CRE 404(b) only requires the exclusion of evidence of other crimes, wrongs, or acts offered for the purpose of proving the character of a person in order to show that he acted in conformity therewith. Although the prosecution must articulate a precise evidential hypothesis by which a material fact can be permissibly inferred from the prior act that is independent of the inference forbidden by CRE 404(b), upon a showing of logical (CRE 401) and legal (CRE 403) relevance under that hypothesis, evidence of other crimes will not be excluded under the rules of relevance. *See Spoto*, 795 P.2d at 1318–19.

### III. ADMISSIBILITY OF TRANSACTIONS INVOLVING L.L. AND P.B.

■ In order to prove that the defendant in this case was guilty of kidnapping and sexual assault, the prosecution was required to show that he knowingly seized and carried the victim from one place to another without her consent and that he knowingly inflicted sexual intrusion or penetration on her by physical force or violence. The trial court heard the prosecution's pretrial motion to admit the evidence of uncharged misconduct, and in a written order granted admission of all four transactions for the purpose of showing a common plan, scheme or design, modus operandi, motive or intent, and to refute the defendant's contention that the alleged victim's claim of sexual intercourse or contact was a fabrication.

#### (1) MATERIAL FACT

■ The other-crimes evidence was therefore clearly offered as relating to a number of facts that were material or of consequence to the determination of the action, as required in the first step of the *Spoto*

analysis.[4] Some of the purposes for which the evidence was admitted were actual elements of the charged crimes, or ultimate facts to be proved, while others were intermediate or evidential facts, themselves probative of ultimate facts. Generally, in a criminal prosecution the ultimate facts or elements consist of showing that the accused committed the guilty act, sometimes described as the "identity" of the accused,[5] and that he did so with the required intent or state of mind and without legal excuse or justification. Plan, scheme, design, modus operandi, and motive, while not usually elements or ultimate facts themselves, are among, or closely related to, those examples of permissible reasons enumerated in the rule and are well-accepted methods of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character.

Although the trial court expressly omitted "identity" from the list of purposes for which the evidence would be admitted, it did so not from any failure to understand that the identity of the accused was necessarily a material element of the crime but rather because it considered the question of "identity" to be no longer at issue in either the charged offense or the uncharged misconduct. The defendant's theory or concession,[6] however, extended only to an admission that he had given the victim a ride about the time and place of the alleged assault. The trial court therefore only found unnecessary, and only refused to admit, the other-crimes evidence to prove that the defendant was the person to whom the victim referred as giving her a ride and assaulting her. It in no way suggested, however, that the other-crimes evidence was unnecessary or inadmissible to prove that the defendant actually committed the guilty act. *See State v. Griffin*, 142 Ohio App.3d 65, 753 N.E.2d 967, 974 (2001)("Identity is not synonymous with mere presence."). Quite the contrary, by admitting the evidence as supportive of the victim's claim of sexual intercourse, as well as for common plan, scheme or design, modus operandi, and motive, the trial court made clear its intent to admit the evidence of other crimes precisely for the purpose of proving that the prohibited act was committed.

## (2) LOGICAL RELEVANCE

Evidence of the incidents involving L.L. and P.B., upon which the court of appeals reversed, was also logically relevant to prove a material fact, as required in the second step of *Spoto*. Those incidents were part of a pattern of behavior by the defendant demonstrating a method for committing crimes like those for which he was on trial. Even though these two incidents were terminated by action of the victims before any completed act of sexual penetration, they were evidence from which the jury could find that the defendant had a history of offering young women a ride as a ruse to isolate them and have sex with them, regardless of their consent.

Evidence indicating that the defendant had offered young women a ride in the past for the purpose of having sex had at least some tendency to make it more probable as a logical matter that he intended to have sex with the victim in the charged offense, after admittedly offering her a ride under similar

4. In its holding the court of appeals added to the first step of the *Spoto* analysis the requirement that the material fact for which the other-crimes evidence is offered be "contested." Slip op. at 3. Whether a material fact is contested clearly affects the need for or incremental probative value of the evidence offered to prove it, but it does not make the fact itself any less material or the evidence offered to prove it any less logically probative. The court of appeals therefore incorrectly found that the evidence failed to satisfy the first step the *Spoto* test.

5. Because the question of whether the accused committed the criminal act contains the subquestions of whether the act was committed by some-one and whether, if so, the accused was the person who committed it, the broader question has sometimes been separated into the questions of "identity" and "commission of the actus reus." *See, e.g.,* Imwinkelried, *supra,* ch.4.

6. At the motions hearing the parties indicated that they had a "stipulation to ID," and defense counsel made clear at both the hearing and in his opening statement at trial that the defendant was the person who picked the victim up and gave her a ride. The precise limits and legal effect of any concession by the defendant remain unclear, however, because no stipulation was ever submitted to the jury.

circumstances. In conjunction with evidence that the defendant had sexually assaulted women on certain past occasions after similarly picking them up, as well as the victim's testimony in this case that the defendant sexually assaulted her after picking her up, evidence of examples of the defendant's scheme to pick up young women for the purpose of sexual gratification also had at least some tendency to make it more probable that he had sexual relations with the victim in this case. *See* Wigmore, *supra*, §§ 302–03. Rule 401's requirement of logical relevance is satisfied as long as the evidence in question has any tendency to make a fact of consequence more probable than it would be without that evidence.

### (3) INDEPENDENCE OF INFERENCE FROM BAD CHARACTER

The chain of logical inferences from the evidence of the defendant's prior conduct in step two is also independent of any inference that he must have committed a sexual assault in this case because he is a person of criminal character. The inference relied on arises not from the criminal character of the accused but from the demonstration of his pattern of using a particular technique to accomplish a particular end. The evidence tended to show that when the defendant did certain things, in a certain way, a number of times in the past, he did so with a criminal purpose, and he took affirmative action to accomplish that purpose. The evidential hypothesis by which the commission of the guilty act could properly be inferred is included in the term modus operandi, which is a traditional, if not precisely defined, expression of a legitimate way of proving the ultimate facts in a criminal case without reliance on an inference from bad character.

Although the other uncharged acts were therefore logically relevant without reliance upon the one impermissible inference, the more difficult question, as is virtually always the case, was whether the evidence of the defendant's other crimes was sufficiently probative for legitimate purposes when balanced against the danger of unfair prejudice.

### (4) CRE 403

In the final step of the analysis, the trial court necessarily retains a great deal of discretion, bearing in mind that the admission of uncharged misconduct always has a substantial potential for unfair prejudice. *People v. Nuanez,* 973 P.2d 1260, 1263 (Colo.1999); *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993). Beyond finding logical relevance, it must assess the weight that would be added to the prosecution's case by admitting the other-crimes evidence. Unlike Rule 401's "relevance," Rule 403's "probative value" is not considered in isolation but signifies the "marginal" or "incremental" probative value of evidence relative to the other evidence in the case. *See Old Chief v. United States,* 519 U.S. 172, 184–85, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)(citing 1 Charles T. McCormick, McCormick on Evidence 782 & n. 41 (John W. Strong ed. 4th ed. 1992)); *People v. Saiz,* 32 P.3d 441, 446 (Colo.2001)(citing *Nuanez,* 973 P.2d at 1263). Therefore, the court must weigh "the logical force of the evidence and the proponent's need for the evidence," in light of other available evidence. *Martin v. People,* 738 P.2d 789, 794 (Colo.1987). Finally, it must assess the danger of unfair prejudice and exclude the evidence if its "incremental" probative value would be substantially outweighed by that danger. *Id.* (where defendant stipulated to lawful confinement, mittimus showing his conviction for murder was not additionally probative of that element and should have been excluded as unfairly prejudicial).

The probative value or logical force of evidence of other crimes cannot be determined according to any precise formula. Depending on the purpose and theory of logical relevance advanced for its admission, the assessment of its probative value may involve a host of factors, including the distinctiveness of the other crimes and their relationship to the charged offense in terms of time and similarity. Contrary to the apparent assumption of the court of appeals, however, CRE 404(b) contains no separate requirement of similarity. *See Spoto,* 795 P.2d at 1320 ("generally no similarity of conduct requirement concerning evidence of other

crimes, wrongs or acts"). Under a particular evidential hypothesis, similarity may not be significant at all, and if significant, the nature and extent to which similarity is important may vary greatly.

When evidence of other crimes is offered to show a defendant's motive for committing a charged offense or to show that other crimes were part of the preparation or plan to commit a charged offense, similarity of the crimes often has no significance whatsoever. *See, e.g., United States v. Brooks,* 125 F.3d 484 (7th Cir.1997)(evidence of defendant's prior drug use admissible as motive for bank robbery); *United States v. Lamb,* 575 F.2d 1310 (10th Cir.1978)(allowing under Fed.R.Evid. 404(b) evidence of prisoners' escape, kidnapping of guard, and commandeering of an apartment to show the prisoners' "plan" to commit the charged robbery); *United States v. Haldeman,* 559 F.2d 31 (D.C.Cir.1976)(evidence of prior uncharged office break-in admissible in trial for charged cover-up). Even when evidence of other crimes is offered to demonstrate a common method or modus operandi, the degree of similarity necessary to give the evidence sufficient probative force for admission varies considerably depending upon the element or ultimate fact for which it is offered. Evidence of design or method offered to prove that the defendant, as distinguished from anyone else, committed the charged offense generally depends much more heavily on the distinctiveness and similarity of the crimes than evidence offered merely to prove that the defendant acted intentionally. *See United States v. Fields,* 871 F.2d 188 (1st Cir. 1989)("[A] 'much greater degree of similarity ... is required when the evidence of the other crime is introduced to prove identity' than when it is introduced for another of the myriad of reasons allowed under [Fed. R.Evid.] 404(b)...."); Wigmore, *supra,* §§ 302–04 (distinguishing the degree of similarity required to prove identity from the lesser degree required to prove intent or mistake).[7]

Other-crimes evidence demonstrating a common design or modus operandi has been admitted in prosecutions for sexual assault not only to prove who committed the crime but also to prove that the alleged sex act actually occurred. *See, e.g., People v. Luczak,* 306 Ill.App.3d 319, 239 Ill.Dec. 698, 714 N.E.2d 995, 1001 (1999); *People v. Fuller,* 117 Ill.App.3d 1026, 73 Ill.Dec. 474, 454 N.E.2d 334, 341–43 (1983). Like admission of other-crimes evidence to prove intent, its admission to prove the commission of the guilty act when identity is already conceded does not depend upon distinguishing the defendant from others who also had the capacity and opportunity to commit the crime. Similarly, where the guilty act consists of an act like sexual intercourse, the other crimes need not make it more likely that the victim's injury was the result of an act of the defendant than of natural accident. *See United States v. Woods,* 484 F.2d 127 (4th Cir.1973)(admitting evidence that over a twenty-five-year period, nine children in defendant's custody experienced twenty cyanotic episodes, for purpose of proving commission of actus reus). Evidence of other acts to prove the commission of the guilty act is admissible under the various logical theories or evidential hypotheses that apply to other ultimate facts, but as with intent generally, the distinctiveness of preparatory acts is less significant in proving the actor's purpose or intention than in showing the identity of the actor.

Evidence of the defendant's uncharged misconduct is clearly not admissible solely to bolster the testimony of a prosecution witness, but neither is it excluded merely because it may have that effect. *See Luczak,* 714 N.E.2d at 1001. If other-crimes evidence is otherwise admissible to prove a material fact by showing, for example, a common design or modus operandi, it may simul-

---

**7.** *See generally* Imwinkelried, *supra,* §§ 8:07 ("[U]nder some theories of logical relevance, the uncharged act need not be similar to the charged act. Moreover, even among theories requiring similarity, the required degree of similarity varies. The modus theory of identifying the defendant as the criminal requires the highest degree of similarity while [Dean Wigmore's] doctrine of chances demands less similarity to prove the occurrence of an actus reus or guilty state of mind"), 5:08 (degree of required similarity less when proving intent through Wigmore's doctrine of chances than when proving identity through modus operandi).

taneously corroborate the victim's testimony of the existence of that fact. Moreover, where disputed testimony of the victim is the only direct evidence of the commission of the guilty act, additional evidence that is probative of that fact may have particular "marginal" or "incremental" probative value.

Although there were obvious differences in the circumstances surrounding each transaction admitted in this prosecution, they shared a number of significant characteristics that evidenced a pattern of behavior rather than isolated prior incidents. *See Garner,* 806 P.2d at 375 ("[I]t is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed.") The two prior incidents that actually resulted in sexual penetration, in addition to involving similar preparatory acts, included distinctive and unpredictable personal details of the commission and aftermath of the assault that were so similar to those alleged by the victim of the charged crime as to virtually compel an inference that the act occurred or that the victim was acting in collusion with the prior victims. Particularly, the combination of the defendant's disrobing preference, his fixation during the assault on meaningless physical anomalies of the victim, and his insistence on paying the victim as if she had consensually performed a service would be difficult to invent in the absence of a similar sexual encounter.

■ In addition, however, the combination of all four incidents added substantial weight to the inference of a technique to isolate young women for the purpose of having sex. A greater number of incidents of similar behavior is important in proving that it is directed or purposive rather than coincidental. *See Spoto,* 795 P.2d at 1320; Wigmore, *supra,* § 302. Because the defendant did not admit the assaults in any of the cases, each of the five was to some extent dependent upon the others to prove that sexual encounters were intended by the defendant's preparatory behavior and that sexual assaults actually occurred unless the victims were able to escape. Although the incidents involving L.L. and P.B. were interrupted by the victims' escape, they were nevertheless similar in significant aspects and substantially contributed to the inference that the defendant's technique of isolating vulnerable females by offering them a ride and driving them to a secluded location was preliminary to and for the purpose of sexual gratification.

■ While preparatory acts or even overt attempts, standing alone, may sometimes be insufficiently probative of a defendant's unfulfilled intention, in conjunction with evidence of consummated crimes resulting from similar preparations, they can form a pattern of behavior that is probative of the commission of the act. Furthermore, to the extent that the incidents are further removed from a completed crime, they correspondingly present less of a danger of unfair prejudice. To the extent that the incidents involving L.L. and, especially, P.B were less probative of the defendant's intention to commit sexual assault, they were also less serious, heinous, or egregious, than the three sexual assaults presented to the jury and were less likely to have an inflammatory effect.

■ Trial courts are necessarily accorded considerable discretion in deciding questions concerning the admissibility of evidence, and an abuse of that discretion will be found only upon a showing that the ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Harris,* No. 00SC185, slip op. at 11, 2002 WL 372916 (Colo. Mar.11, 2002). Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *See People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995). Evidence of uncharged crimes has a distinct and unmistakable potential for unfair prejudice, but unfair prejudice within the meaning of the rule still refers only to "an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis" and does not mean prejudice that results from the legitimate probative force of the evidence. *Id.* at 608.

The trial court heard the motion to admit evidence of other crimes and the objections to it. It demonstrated its awareness of the applicable law controlling the admission of

other-crimes evidence, and it made findings as to each of the four steps of the *Spoto* test. It even modified the list of purposes for which the evidence would be admissible that was proposed by the prosecution, notably disallowing the other-crimes evidence to identify the defendant. In light of the considerations already articulated, it cannot be fairly said by a reviewing court that the trial court abused its discretion in finding that the probative value of the other-crimes evidence admitted in this case was substantially outweighed by the danger of unfair prejudice.

## IV. CONCLUSION

In finding reversible error, the court of appeals misperceived the import of our application of the Colorado Rules of Evidence to the introduction of uncharged criminal misconduct evidence and misapplied the four-part analysis of *People v. Spoto*. Properly considered, the concerns of the court of appeals amount to a disagreement about the balance of probative value and prejudicial effect required by CRE 403. Accordingly, the judgment of the court of appeals is reversed and the case is remanded with directions that the judgment of conviction and sentence be affirmed.