**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Darrell Lee COUSINS, Defendant–Appellant.**

**No. 05CA1524.**

Colorado Court of Appeals, Div. III.

Nov. 15, 2007.

Certiorari Denied April 28, 2008.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Lindsey Webb, Deputy State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Darrell Lee Cousins, appeals the judgment of conviction entered upon a jury verdict finding him guilty of menacing and possession of a weapon by a previous offender, both class five felonies, and third degree assault, a class one misdemeanor. We affirm.

## I. Background

### A. Charged Offense

At trial, the victim testified that, on April 30, 2004, she and her four-year-old son were waiting outside of a gas station for their bus when defendant approached her. Defendant asked if she wanted to buy any of his compact disks, and asked for her name and telephone number. She told defendant she was married, she was not interested in him, and she "didn't want to talk to any peddlers, period." Defendant walked to his car, and the victim turned away to watch for her bus. Suddenly, defendant ran toward her and punched her in the neck with a closed fist. He then warned her not to make a scene, pulling up his shirt to show her a handgun tucked in his waistband. He cursed at her and told her to walk away "before you get fucked up."

The victim took her son into the retail portion of the gas station, where her mother was waiting, and attempted to write down defendant's license plate number. Defendant noticed her actions and ran back to the store, but the victim was able to lock the doors before he could enter. Defendant shouted at her: "If you call the police on me, every time I see you, I'm going to fuck you up every time."

## B. Other Acts

Prior to trial, the prosecution filed two motions to introduce other act evidence under CRE 404(b). The first act the prosecution sought to introduce involved M.J., who had been defendant's girlfriend in 1998. There, defendant came home angry because she had paged him. He put his hands around her throat, put his arm around her neck from behind, dragged her to the bedroom, and threw her on the bed. Defendant allegedly told M.J. that he was "ready to punch your ass," and "I'm ready to choke you," before forcing her into a closet and refusing to let her out. He also allegedly stated: "I'll kill you if you call the police"; "If you put me in jail I'll come after your momma"; "I know where she lives"; and "I found my last victim."

The second act the prosecution asked to introduce involved M.P., who was defendant's girlfriend in 1999. In this incident, M.P. gave a friend at a restaurant her phone number so he could get in touch with her ex-husband. Defendant later hit her in the back of the head, and, when they returned to their hotel room, he beat her so severely that her jaw and several teeth were broken. He told her he beat her because he was jealous, and, when he was finished, he repeatedly said, "That's why I hate women." Defendant pleaded guilty to class five felony menacing and served time in prison for that offense.

At the hearings held on the motions, the prosecutor argued the evidence was admissible under CRE 404(b) as proof of "knowledge," an element of the menacing charge, because it was relevant to whether defendant "knowingly brandished the gun in a manner which would cause a person to feel that they were in imminent risk of serious bodily injury." He also contended the evidence established defendant's modus operandi of becoming violent and threatening in a romantic or attempted romantic relationship when a woman rejects or angers him. The prosecutor referred to the events involving M.P. as proof of defendant's motive for attacking the victim in the charged offense.

The trial court applied the four-part test for admissibility of other act evidence set forth in *People v. Spoto*, 795 P.2d 1314, 1318

(Colo.1990). The court determined the evidence related to the material fact of whether defendant committed the charged crime, and the "way [defendant] relates to women who anger him." The court found the evidence logically relevant "because it shows that he has behaved in a similar fashion on other occasions," and the relevance was, therefore, independent of the inference defendant had a bad character. The court decided the evidence was probative of defendant's way of relating to women, or modus operandi, and defendant's identity as having committed the offense. Finally, without further analysis, the court concluded the probative value of the evidence was not outweighed by the danger of unfair prejudice.

## II. Admissibility of CRE 404(b) Evidence

CRE 404(b) establishes a rule and an exception. The rule is that evidence of specific acts cannot be used to prove a person's character to show he or she acted in conformity with it on a particular occasion. The exception is that evidence of other acts may be admissible for other purposes. A nonexclusive list of those purposes appears in CRE 404(b).

The rule is based on important policy considerations. There is a risk the jury will convict a defendant to punish him or her for past misconduct, or because the defendant is a bad person. There is the prospect the jury will place undue weight on the character trait when evaluating whether the defendant is guilty of the charged offense. Last, it is not fair to require a defendant to defend against both the present charges and his personality or prior conduct. *Masters v. People*, 58 P.3d 979, 995 (Colo.2002).

The exception is inclusionary, meaning evidence is admissible, subject to satisfying certain conditions, if it is relevant to an issue other than a defendant's propensity to commit a crime because of his character. *Id.* (citing Christopher B. Mueller and Lard C. Kirkpatrick, *Evidence* § 415, at 214 (2d ed. 1999) ) (Fed.R.Evid.404(b) "adopts an inclusionary rather than an exclusionary approach"); *People v. Rath*, 44 P.3d 1033, 1039 (Colo.2002); *People v. Garner*, 806 P.2d 366,

370 (Colo.1991); *see United States v. Record,* 873 F.2d 1363, 1373 (10th Cir.1989)(the Tenth Circuit has "described the parameters of Rule 404(b) in an inclusive sense, holding that 'it would allow admission of uncharged illegal acts unless the only purpose for their admission is to prove the criminal disposition of the defendant' " (quoting *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.1977)) ).

*People v. Spoto,* 795 P.2d at 1318, sets out a four-part test trial courts must apply when evaluating whether to admit evidence under CRE 404(b). Each step must be satisfied before moving to the next. First, the trial court must determine whether the evidence relates to a material fact, which is defined by CRE 401 to be a fact "that is of consequence to the determination of the action." Second, the evidence must be logically relevant for purposes of CRE 401, meaning it must have "any tendency to make the existence" of the material fact "more probable or less probable than it would be without the evidence." Third, the trial court must decide whether the logical relevance of the evidence is independent from the intermediate inference, barred by CRE 404(b), that the defendant committed the crime because he or she acted consistently with his or her bad character. Last, the court analyzes, under CRE 403, whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice."

■ Trial courts are accorded great discretion in deciding whether to admit evidence of other acts under CRE 404(b). That discretion is abused only if the ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Rath,* 44 P.3d at 1041.

When conducting the fourth step of the evaluative process, a trial court must analyze the weight to be added to the prosecution's case, considering its probative force and the prosecution's need for it, in light of the other admissible evidence. Because the analysis required by CRE 403 favors admission of evidence, an appellate court reviewing a trial court's decision to admit evidence must view the evidence as having the maximum probative value and the minimum prejudicial impact a reasonable juror would give it. *Id.* at 1043.

■ The court then weighs the danger of unfair prejudice, excluding evidence of other acts if its "incremental" probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Unfair prejudice occurs under CRE 403 if otherwise admissible evidence has "an undue tendency to suggest a decision [made] on an improper basis," which is "commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. District Court,* 785 P.2d 141, 147 (Colo.1990). Unfair prejudice does not occur because a defendant's case is damaged. *Id.* Thus, the prejudice resulting from the evidence's legitimate probative force is not unfair. *People v. Gibbens,* 905 P.2d 604, 608 (Colo.1995).

■ A conviction will not be overturned on appeal when the trial court employed an erroneous standard in analyzing the admissibility of proof of other acts under CRE 404(b) if two conditions are met. The evidence must be admissible, and the proper foundation must be laid for its admission. *People v. Martinez,* 36 P.3d 154, 158 (Colo. App.2001).

■ A trial court's decision may be defended on the trial court's express rationale, or on any ground supported by the record, even if that ground was not articulated or considered by the trial court. *People v. Quintana,* 882 P.2d 1366, 1371 (Colo.1994).

With these general principles in mind, we review defendant's argument that the trial court abused its discretion by admitting the evidence of the two prior incidents in this case.

## A. Material Fact

■ Defendant contended the crime did not occur and the victim fabricated it. Evidence of other acts is admissible to prove the act prohibited by law was committed. *People v. Rath,* 44 P.3d at 1040.

Because the question of whether the accused committed the criminal act contains the subquestions of whether the act was committed by someone and whether, if so, the accused was the person who committed it, the broader question has sometimes

been separated into the questions of "identity" and "commission of the actus reus." *Id.* at 1040 n. 5.

Here, therefore, the evidence of the other two events concerned a material fact at issue: whether defendant assaulted the victim, or whether the victim made up the attack.

### B. Logical Relevance

■ The list of exceptions to the rule of prohibition in CRE 404(b) includes motive. This exception is not an element of crimes, and is thus not an ultimate fact at issue. However, it is a "well-accepted method[ ] of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." *Id.* at 1040.

Here, the prosecutor argued to the trial court that evidence of at least one of the prior acts was probative of defendant's motive. Thus, we shall consider whether that ground supported the admission of the evidence of the prior acts. *See People v. Quintana,* 882 P.2d at 1371.

■ It is permissible to prove a defendant's motive for committing a crime. *Moss v. People,* 92 Colo. 88, 93–94, 18 P.2d 316, 318 (1932); *see Masters v. People,* 58 P.3d at 992 (while proof of motive is not normally a required element of an offense, "the absence of apparent motive may make proof of the essential elements less persuasive" (quoting *People v. Phillips,* 122 Cal.App.3d 69, 175 Cal.Rptr. 703, 712 (1981)) ). Further, evidence of motive is relevant to prove a crime was committed. *See United States v. Sebolt,* 460 F.3d 910, 917 (7th Cir.2006) ("establishing motive tends to prove a crime was committed"); *Mitchell v. State,* 865 P.2d 591, 596 (Wyo.1993)(evidence of motive is admissible when defendant argued crime never happened and victim fabricated the allegations). *But see People v. Sabin,* 463 Mich. 43, 68–69, 614 N.W.2d 888, 901–02 (2000) (use of other acts to prove motive to show charged crime occurred would only achieve prohibited purpose that a defendant acted consistently with his or her character).

Proof of other acts can be introduced to establish motive as a cause of the charged crime. The other acts and the charged offense are thus explained as results of the same motive. Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 3.15, at 35–36 (1996). This is so because:

> The courts have variously described the concept of motive as the "reason that nudges the will and prods the mind to indulge the criminal intent," an "inducement or state of feeling that impels and tempts the mind to indulge in a criminal act," and "the moving force which impels to action for a definite result." While intent accompanies the actus reus, the motive comes into play before the actus reus. The motive is a cause, and the actus reus is the effect.

*Id.* at 39.

■■ Proof of motive can extend to antipathy toward discrete groups, like racial minorities or women. "By establishing that the defendant harbors a strong animus against people of the victim's race, the other-acts evidence goes beyond establishing a propensity toward violence and tends to show why the defendant perpetrated a seemingly random and inexplicable attack." *Masters v. People,* 58 P.3d at 999 (quoting *People v. Hoffman,* 225 Mich.App. 103, 108, 570 N.W.2d 146, 149 (1997)). Other acts showing hatred of women can provide the motive for a "seemingly random and inexplicable attack" upon a female victim. *Id.* at 998–1000.

■ "When evidence of other crimes is offered to show a defendant's motive for committing a charged offense ... similarity of the crimes often has no significance whatsoever." *People v. Rath,* 44 P.3d at 1042.

### C. Analysis

■ Evidence of the prior incidents was logically relevant to prove defendant punched the victim. These incidents were evidence from which the jury could find that defendant used violence and threats of violence against women when they frustrated his desires in order to force them to comply with his wishes. *People v. Fry,* 74 P.3d 360, 370–371 (Colo.App.2002) (evidence of other acts admitted to show defendant intended his actions, he did not act by mistake or accident,

his motive, and malice), *aff'd,* 92 P.3d 970 (Colo.2004). The other two incidents provided a motive for the "seemingly random and inexplicable attack" upon the victim. They showed defendant's anger at and hatred of women, thus establishing a cause that produced the effect of defendant's punch to the victim's neck.

### D. Independent Inference

When using other acts to prove a crime occurred, the chain of reasoning prohibited by the rule found in CRE 404(b) is that (1) the act of uncharged misconduct leads to (2) an intermediate inference of the defendant's subjective character, which leads to (3) the ultimate inference that the act for which the defendant is being tried is consistent with his or her character. *People v. Spoto,* 795 P.2d at 1318.

The acceptable analysis, applicable here, would be (1) the act of uncharged misconduct creates (2) the intermediate inference that the defendant had a motive to commit the charged offense, resulting in (3) the ultimate inference that the defendant committed the actus reus of the charged crime. *See* Imwinkelried, § 2.21.

Here, the prior acts contained significant information indicating defendant's hatred of women. The nature of the violence he directed toward them indicated this hatred. He told M.J. that "a woman was not supposed to question a man." He threatened to kill her and to "go after" her mother if she called the police. After defendant brutally beat M.P., while telling her he was jealous because she had given her telephone number to other men, he repeatedly stated, "That's why I hate women." He threatened to kill M.P. and rape her daughters if they reported him to the authorities.

Thus, this evidence established defendant's animus toward women as a motive for his attack on the victim.

The evidence shows that on multiple occasions, defendant hit or battered women with whom he had an intimate relationship. All of the incidents involved angry, violent outbursts in which defendant hit the women with his fists, usually in the face, head, or upper body.

*People v. Fry,* 74 P.3d at 370–71.

### E. CRE 403

Here, the victim was the only witness to defendant's assault, although her mother and a store attendant observed some of defendant's conduct and overheard the threats he made to the victim after the assault. Because defendant and the victim did not have an established relationship, and because these events occurred in a public area, defendant's conduct appeared to be an "inexplicable act of random violence." *See Masters v. People,* 58 P.3d at 998.

The evidence of defendant's motive established a cause for the effect of the seemingly inexplicable attack upon the victim. *See id.* at 999. It was directly relevant to proving whether defendant committed the actus reus of the crime. *See id.* at 1002.

The testimony about the other two events was not unfairly prejudicial because it did not have an undue tendency to provoke the jury to make a decision on an improper emotional basis, like "sympathy, hatred, contempt, retribution, or horror." *See id.* at 1001. Because the probative value of the evidence must be substantially outweighed by the danger of unfair prejudice, CRE 403, and we must assume the maximum probative value and minimum prejudicial impact for this evidence, *People v. Rath,* 44 P.3d at 1043, the need for exclusion of the evidence must be great. *Masters v. People,* 58 P.3d at 1001. That great need did not exist here.

We therefore conclude the trial court did not abuse its discretion in concluding that the probative value of the evidence of other acts was not substantially outweighed by the danger of unfair prejudice.

### III. CRE 404(b) Procedures

Defendant contends the jury should have been provided with a definition of the term "modus operandi." We need not reach this issue, because we affirm the judgment based on our conclusion that the evidence of other acts was admissible as evidence of motive.

■ Defendant also argues his conviction must be reversed because the trial court failed to provide the jury with a proper limiting instruction before M.P. testified. We disagree.

■ Generally, a court should instruct a jury on the limited purpose served by CRE 404(b) evidence when it is discussed in testimony and again in the closing instructions. *People v. Warren*, 55 P.3d 809, 815 (Colo. App.2002).

Here, the trial court had previously provided the jury with a proper instruction before M.J. testified. The closing charge contained a proper limiting instruction identifying both M.J. and M.P. Thus, we conclude that, under the circumstances of this case, the failure to give a limiting instruction before M.P. testified was harmless. *See id.*

## IV.  Mistrial

■ A police officer testified he found defendant had a "very extensive criminal history." The court granted defendant's motion to strike this testimony. Defendant moved for a mistrial, which the trial court denied. Defendant argues his conviction must be reversed because the trial court should have granted a mistrial. We conclude reversal is not required under the facts of this case.

■ "A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means." *People v. Dore*, 997 P.2d 1214, 1221 (Colo.App.1999); *People v. Salazar*, 920 P.2d 893, 897 (Colo.App.1996). The standard of reviewing a trial court's denial of a motion for a mistrial is whether the court abused its discretion. *People v. Dore*, 997 P.2d at 1221.

■ "[T]he mere reference to an accused's past criminal act is not per se prejudicial, requiring a new trial." *People v. Abbott*, 690 P.2d 1263, 1269 (Colo.1984). In *People v. Abbott*, one reference to past criminal acts in the form of a single remark without further details was not enough to require a new trial. *Id.* It follows that one reference to defendant's "extensive criminal history" likewise does not require a new trial.

Here, the comment was not highlighted for the jury and was stricken from the record. The trial court remedied any possible prejudice by granting defendant's motion to strike the testimony. We presume the jurors followed the court's curative instruction. *People v. Copenhaver*, 21 P.3d 413, 418 (Colo. App.2000).

The same officer was asked how he researched "street" names. This inquiry was made because the victim did not know defendant's full name and thought she knew him by a street name.

The officer replied that he called the gang intervention unit for a database of street names. While the testimony may have suggested defendant was in a gang because the officer consulted the gang intervention unit, the testimony did not further indicate that defendant was a gang member. This case did not involve a dispute between gang members or evidence of any gang-related motive, nor did the officer's testimony indicate that defendant was involved in any specific gang-related activity.

Rather, the testimony was focused on a method used to research street names. Thus, this testimony was not so inflammatory as to require a mistrial. There was no reasonable possibility that the evidence caused the jury to convict defendant for an unfair reason, and we conclude the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *See People v. Whittiker*, 181 P.3d 264, 274, 2006 WL 3437556 (Colo.App. No. 01 CA2340, Nov. 30, 2006).

## V.  Motion to Sever

■ Defendant claims he was prejudiced by the trial court's denial of his motion to sever the count alleging he committed possession of a weapon by a previous offender from the other counts. We are not persuaded.

■ A trial court's pretrial denial of a defendant's motion under Crim. P. 14 to sever counts will be reversed only upon a demonstration that the decision was an abuse of discretion. A defendant must renew the motion either at the time the evidence is admit-

ted, or at the close of all the evidence. Renewing the motion will inform the court of the need to review its pretrial decision in light of the evidence presented at trial, and provide the defendant with an opportunity to change his or her mind about the need for a severance based upon that evidence. The absence of such a motion waives any objection on appeal. *People v. Aalbu,* 696 P.2d 796, 805–06 (Colo.1985); *People v. Peterson,* 656 P.2d 1301, 1304–05 (Colo.1983).

Here, defendant renewed the motion to sever at the beginning of trial. At different times during the trial, defendant alleged the denial of the motion to sever prejudiced his case. We conclude these repeated references to the alleged problems created by the trial court's denial of the severance motion to be sufficient to have informed the court of the need to review its pretrial decision. Thus, defendant has preserved this issue for appeal.

In *People v. Peterson,* 656 P.2d at 1305, our supreme court held that, where a defendant is charged with a substantive offense and with possession of a weapon by a previous offender, the court should consider all procedural safeguards, including an order for separate trials or a bifurcated procedure. *Id.* The reason for these measures is to protect defendants from the impermissible inference that they committed the crime charged because they had been previously been convicted of other crimes. *People v. Carlson,* 119 P.3d 491, 493 (Colo.App.2004).

Appellate review of a motion for severance will be overturned only upon a showing of abuse of discretion. *People v. Aalbu,* 696 P.2d at 806. "An abuse of discretion will be found where it is demonstrated that the joinder caused actual prejudice to the defendant ... and that the trier of fact was not able to separate the facts and legal principles applicable to each offense." *Id.*

Here, defendant has not demonstrated he was prejudiced. Even had the possession of a weapon by a previous offender count been tried separately, the jury would have learned of defendant's prior criminal conduct through the evidence admitted under CRE 404(b), although the jury would not have been informed of the prior conviction stemming from it.

Further, the trial court instructed the jury:

You have heard evidence that the defendant has a felony conviction. Evidence of the previous felony conviction may not be used to consider whether the defendant has a bad character or that he has a propensity to commit crimes.

This instruction specifically addressed the concern motivating defendant's motion to sever. Absent evidence to the contrary, we presume the jury followed the trial court's instructions. *People v. Harlan,* 8 P.3d 448, 473 (Colo.2000). We do not find any such evidence here.

Moreover, even had the counts been severed, the jury would have heard evidence defendant possessed a weapon because it had to consider his guilt on the menacing count. § 18–3–206(1)(a), C.R.S.2007 (menacing is a class five felony if committed "[b]y the use of a deadly weapon").

We conclude the trial court did not abuse its discretion in denying defendant's motion to sever the charges. *See People v. Aalbu,* 696 P.2d at 806.

## VI. Sufficiency of Evidence

Defendant claims the evidence presented at trial was insufficient to support a finding he carried a handgun, and was therefore insufficient to support a conviction for possession of a weapon by a previous offender. We disagree.

Challenges to the sufficiency of the evidence require the reviewing court to determine whether the relevant evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Jackson,* 98 P.3d 940, 945 (Colo.App.2004). Convictions will not be reversed for lack of evidence simply because a different result could have been reached. *People v. Fuller,* 791 P.2d 702, 706 (Colo. 1990).

Here, defendant argues there was insufficient evidence for a reasonable jury to determine that the object in question was a firearm. Because no shots were fired, defendant states the only way the jury could have found the handgun the victim saw in his waistband was a firearm was by speculating that it was capable of discharging a projectile. This argument fails.

 The possibility that the object in question was a fake firearm does not suggest there was insufficient evidence to support a finding that the object was a real firearm capable of discharging a projectile. *See United States v. Hunt,* 187 F.3d 1269, 1270–71 (11th Cir.1999) (collecting cases); *United States v. Jones,* 16 F.3d 487, 491 (2d Cir. 1994)("The mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility."); *Morrison v. United States,* 417 A.2d 409, 412 (D.C.1980)(fact that pistol was never recovered did not prevent jury from inferring it was operable based on victim's testimony about how pistol was displayed).

Rather, any evidence presented that the gun was fake merely posed a choice to the jury between two competing theories of fact. As fact finders, the jury was free to weigh the importance of the evidence and resolve any conflicts or inconsistencies in the evidence. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988).

■■■ The determination of the credibility of a witness is solely within the province of the fact finder. *People v. Jackson,* 98 P.3d at 945. Only when a witness's testimony is so "palpably incredible and so totally unbelievable" may this court properly reject it as a matter of law. *People v. Dash,* 104 P.3d 286, 289 (Colo.App.2004).

Here, the circumstances surrounding the incident in which defendant showed what the victim believed to be a firearm are neither incredible nor totally unbelievable. Given the victim's testimony about her observation of the weapon during defendant's attack, defendant's display of the weapon, and defen-

dant's threats, the evidence supported the finding that defendant possessed a firearm. While defendant is entitled to highlight facts tending to show the object may have been fake, this court is not permitted to set aside a verdict because it may come to a different conclusion from the same evidence. *See Kogan v. People,* 756 P.2d at 950.

The judgment of conviction is affirmed.

Judge ROY and Judge FURMAN concur.