Opinion by JUDGE BOORAS
¶ 1 Defendant, Kendra Joyce Delsordo, appeals the judgment of conviction and sentence entered on a jury verdict finding her guilty of one count of first degree arson and one count of reckless endangerment. Delsordo claims that (1) the district court erred under CRE 404(b) and CRE 403 by admitting evidence of three prior false police reports and (2) she was deprived of due process when the district court denied her motion to suppress her statements as involuntary and refused to hold an additional evidentiary hearing. We reverse.
I. Background
¶ 2 Early in the morning on December 18, 2012, Delsordo called police to report a fire at her house. She and her seventeen-year-old son, who was visiting for the holidays, left the home while emergency personnel extinguished the fire. A fire investigation concluded that the fire had originated at the dryer exhaust vent from an outside application of heat. The investigators found a tea light candle on the ground near the exhaust vent, and numerous separate, unconnected burn marks on the siding along the outside of the house.
¶ 3 When asked about the details of the fire, Delsordo gradually changed her story. She told the detective on the scene that she had smelled smoke coming from the laundry room the night before, and that she woke up to the smell of smoke. Two days later, the detective interviewed her, and she admitted going outside after hearing a noise on the night of the fire. At a second interview, Delsordo stated that she had been smoking outside that night, and that she had used the *866 cigarette to light a piece of wood on fire beneath the dryer vent. In the previous interview, however, she specifically denied that she smoked.
¶ 4 Delsordo stated that she "did not know" why she lit the wood on fire, and when asked about the numerous burn marks on the house, stated that "not all of that was me." Shortly after these interviews, Delsordo was arrested and charged with first degree arson, reckless endangerment, and criminal mischief. A jury convicted her of the first two charges, and the court sentenced her to twelve years in prison and five years of mandatory parole.
II. Other Act Evidence
¶ 5 Delsordo contends that the district court abused its discretion in admitting other act evidence, specifically, Delsordo's previous false reports of sexual assault. She argues that (1) the evidence was not logically relevant under CRE 404(b) ; (2) any logical relevance was dependent on the prohibited inference of bad character and conformity therewith; and (3) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under CRE 403. We agree with her second argument.
A. Standard of Review and Preservation
¶ 6 The parties agree that Delsordo preserved this issue by objection in the district court. Trial courts have substantial discretion in deciding questions concerning the admissibility of evidence. People v. Elie, 148 P.3d 359, 362 (Colo.App.2006) (citing People v. Quintana, 882 P.2d 1366 (Colo.1994) ). We review a trial court's admission of prior act evidence for an abuse of discretion. People v. Stewart, 55 P.3d 107, 122 (Colo.2002). An abuse of that discretion occurs when a court's ruling is manifestly arbitrary, unreasonable, or unfair. Id.
¶ 7 Because Delsordo objected to the admission of this evidence, any abuse of discretion should be reviewed for harmless error. Yusem v. People, 210 P.3d 458, 469 (Colo.2009). An error in the admission of evidence is harmless if, viewed in light of the entire trial record, it did not substantially influence the verdict or affect the fairness of the trial proceedings. Id. (quoting People v. Gaffney, 769 P.2d 1081, 1088 (Colo.1989) ).
B. Applicable Law
¶ 8 CRE 404(b) establishes a rule and an exception. People v. Cousins, 181 P.3d 365, 369 (Colo.App.2007). The rule is that evidence of specific acts cannot be used to prove a person's character to show he or she acted in conformity with it on a particular occasion. Id. The exception is that evidence of other acts may be admissible for other purposes, including to show motive, common plan, and absence of mistake. CRE 404(b) ; Cousins, 181 P.3d at 369. People v. Spoto, 795 P.2d 1314, 1318 (Colo.1990), sets out a four-part test trial courts must apply when evaluating whether to admit evidence under CRE 404(b) : (1) the evidence must relate to a material fact; (2) it must be logically relevant to that fact; (3) the logical relevance must be independent of the intermediate criminal propensity inference; and (4) its probative value must not be substantially outweighed by the danger of unfair prejudice.
¶ 9 When conducting the fourth step in the evaluative process, a trial court must analyze the weight the evidence adds to the prosecution's case, considering its probative force and the prosecution's need for it, in light of the other admissible evidence. Cousins, 181 P.3d at 370. Because CRE 403, which allows exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, favors admission of evidence, an appellate court reviewing a trial court's decision to admit evidence must view the evidence as having the maximum probative value and the minimum prejudicial impact a reasonable juror would give it. People v. Rath, 44 P.3d 1033, 1043 (Colo.2002).
C. Relevant Facts
¶ 10 Before trial, the prosecution filed a notice of intent to admit evidence of a series of prior acts, including three occasions where Delsordo had falsely reported to police that she had been kidnapped and sexually assaulted. On the first occasion, on August 4, 1997, *867 she reported that she had been kidnapped and sexually assaulted by an individual named Clifford near a church. On the second occasion, reported on August 10, 1997, Delsordo alleged she was sexually assaulted by someone purportedly associated with Clifford as punishment for the report of the first attack. A few years later, Delsordo reported a third occasion in August 2005, which allegedly took place after her car ran out of gas.
¶ 11 After being confronted with contradictions in her statements and the physical evidence, in each case she admitted to the respective investigator that the report was false. When asked why she made the false reports, she told the investigators for the first two incidents that she "didn't know," denied doing it for attention, and instead conceded that she "maybe" made the first report because she felt guilty for being with a man other than her husband.
¶ 12 The prosecution argued that the evidence was admissible for the permissible purposes of showing motive, common plan, and absence of mistake or accident. Delsordo objected to admission of this evidence, but the trial court concluded, after a CRE 404(b) analysis, that evidence of the three false reports was admissible. In so ruling, it noted that the acts carried high probative value, independent of the prohibited inference, because the prior acts were "similar in nature," and that in each act and the charged crime, Delsordo "present[ed] herself as a victim, stag[ed] the scene or provid[ed] a detailed account of the alleged occurrence, contact[ed] emergency personnel and subsequently acknowledge[d] her charade."
¶ 13 As to motive, the reports demonstrated "a history of presenting oneself as a victim, including to such an extent as causing injuries to oneself, to appease some undetermined psychological need for attention and empathy." The court also noted that although the prior acts occurred some time ago and differed from the charged crime, "the number of prior acts and the similarity of the purported victimization reveals manifestation of one general plan, that being attention seeking behaviors." As to absence of mistake or accident, the court noted that evidence of the acts was relevant "by demonstrating similar attention seeking behaviors and thus negates an assertion that the fire was inadvertent or accidental." The evidence was admitted at trial with a limiting instruction about the evidence prior to each witness's testimony and in the final jury instructions.
D. Application
¶ 14 In order to convict Delsordo, the prosecution needed to show that, for first degree arson and criminal mischief, she acted knowingly, and, for reckless endangerment, that she acted recklessly to "creat[e] a substantial risk of serious bodily injury to another person." §§ 18-3-208, 18-4-102(1), 18-4-501, C.R.S.2014. Because the purposes for which the evidence was intended to be admitted-motive, common plan, and lack of mistake-relate to Delsordo's mental state, the evidence relates to a material fact. See Yusem, 210 P.3d at 464 (whether the defendant's actions were accidental or purposeful was related to the defendant's mental state); Rath, 44 P.3d at 1040 ; Spoto, 795 P.2d at 1318. Further, "motive is always relevant" to establish whether the defendant committed the charged act and why, and may also explain otherwise unexplainable behavior. Wagman v. Knorr, 69 Colo. 468, 470, 195 P. 1034, 1035 (1921) ; People v. Leonard, 872 P.2d 1325, 1328 (Colo.App.1993).
¶ 15 Under the second prong, evidence is logically relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. The prosecution contends that a jury could infer from the prior false reports that Delsordo intentionally set fire to the house, and that it was not an accident because Delsordo acted with the intent to "seek attention and sympathy as a victim in a situation [involving] law enforcement."
¶ 16 Assuming the maximum probative value, the prior acts could show that Delsordo committed the prior acts in order to portray herself as a victim and get attention. However, because the prior acts are not similar to Delsordo's actions in the charged offenses, *868 there is insufficient basis for concluding that Delsordo acted with the same motive in both, apart from the prohibited general inference of criminal propensity. See Yusem, 210 P.3d at 465 ; Spoto, 795 P.2d at 1318.
¶ 17 Depending on the circumstances, similarity may not be necessary for a prior act to be relevant. For example, a defendant may commit a second crime to avoid capture for an initial crime. See, e.g., People v. Nuanez, 973 P.2d 1260, 1264 (Colo.1999) (evidence that the defendant was on probation for burglary admissible to show motive in subsequent altercation with and flight from police). Similarly, the commission of one type of crime against a particular victim may demonstrate motive for committing a second different type of crime involving the same victim. See, e.g., People v. Munoz, 240 P.3d 311, 320 (Colo.App.2009) (burglary of storage locker relevant in murder case to demonstrate jealousy as motive for murder); People v. McBride, 228 P.3d 216, 227 (Colo.App.2009) (different kinds of violent acts perpetrated by the defendant against same victim in an ongoing relationship properly admitted under CRE 404(b) ). Although these examples involve prior acts dissimilar to the charged conduct, the prior acts were nevertheless factually connected to the charged conduct.
¶ 18 In other circumstances, the similarity between the prior acts and the charged offenses, rather than providing a factual connection, provides logical relevance. The degree of similarity required to provide logical relevance depends on the purpose for which other acts are offered. See People v. Jones, 2013 CO 59, ¶ 38, 311 P.3d 274 (Bender, J., concurring in the judgment) ("We have previously distinguished the high degree of similarity required to admit other acts evidence for the purpose of proving the defendant's identity from the lower degree of similarity required to admit other acts evidence for other purposes such as proving the defendant's intent or mistake." (citing Rath, 44 P.3d at 1042 )); Edward J. Imwinkelried, Uncharged Misconduct Evidence §§ 8:7, 2:13 (2012) (noting that similarity is required when "the proponent's theory of logical relevance assumes similarity").
¶ 19 "When the other act is unconnected with the offense charged[,] it must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." United States v. Peterson, 808 F.2d 969, 974 (2d Cir.1987) ; see also People v. Janes, 942 P.2d 1331, 1336 (Colo.App.1997) (evidence of prior sexual assault convictions admissible to show common plan despite seven-year time difference because of the level of similarity); People v. Delgado, 890 P.2d 141, 143-44 (Colo.App.1994) (noting that while evidence of common plan typically requires "a nexus or relationship, ... a series of acts of sufficient similarity" may also allow such an inference); United States v. Edwards, 342 F.3d 168, 177 (2d Cir.2003) (requiring unconnected prior acts be sufficiently similar for proof of intent, identity, and knowledge); United States v. Miller, 874 F.2d 1255, 1269 (9th Cir.1989) (requiring certain prior acts be sufficiently similar for proof of intent, and noting that evidence of absence of mistake or accident lacks probative value unless prior and charged acts are sufficiently similar).
¶ 20 Here, Delsordo's prior acts of false reporting had no nexus or connection with the charged offenses. There was almost no similarity between Delsordo's prior act of reporting a rape that had not happened, and the charged act of reporting a fire that actually occurred. The prosecution's argument is essentially that because Delsordo made false police reports in an alleged attempt to receive attention as a victim, that she was more likely to set her home on fire to get the same type of attention. However, that argument falls short because in the prior acts, she reported herself as a victim of a crime committed upon her, while in the charged offenses, she simply reported the existence of a fire in her home-she did not allege that criminal behavior had been committed against her.
¶ 21 While similarity is not necessarily required under CRE 404(b), the lack of similarity between Delsordo's prior acts and the charged offenses supports the conclusion that the prior act evidence has no relevance independent of the inference that Delsordo is the *869 type of person who lies in order to get attention. See Yusem, 210 P.3d at 467 ; Rath, 44 P.3d at 1041. Thus, the evidence should not have been admitted.
¶ 22 Having decided that the prior acts evidence was not admissible under the Spoto test, we must decide whether reversal is warranted. The evidence against Delsordo was not overwhelming. Although Delsordo made some statements about her actions on the night of the fire, she did not admit to intentionally setting the fire. Additionally, Delsordo's expert, Dr. Bastiann Cornelissen, noted that the investigators had violated fire investigation standards and that the physical evidence was consistent with both arson and an accidental fire.
¶ 23 Moreover, although the court properly gave a limiting instruction, the prosecution relied heavily on the other act evidence in argument. Therefore, a reasonable probability exists that the trial court's error contributed to Delsordo's conviction and, thus, was not harmless. See generally Salcedo v. People, 999 P.2d 833, 841 (Colo.2000). The judgment, then, should be reversed, and the case remanded for a new trial.
III. Denial of Motion to Suppress Statements and Due Process
¶ 24 Delsordo contends that the district court deprived her of due process when it denied her motion, filed just one week prior to trial, to present additional evidence on the voluntariness of her statements. Because we reverse and remand for a new trial, we need not address this issue.
IV. Conclusion
¶ 25 We reverse and remand for a new trial.
JUDGE GRAHAM and JUDGE LICHTENSTEIN concur.