The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert SULLIVAN, Defendant–Appellant.

No. 01CA0121.

Colorado Court of Appeals,
Div. A.

July 18, 2002.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Stefani Goldin, Loveland, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.*

Defendant, Robert Sullivan, appeals from the judgment of conviction entered following a bench trial finding him guilty of second degree arson, harassment by stalking, and other offenses. We affirm.

Defendant's wife commenced dissolution of marriage proceedings. When she refused to dismiss those proceedings as he requested, defendant burned her clothes in the backyard of their home. The next day, the wife obtained a restraining order against defendant, prohibiting any contact with her. Nevertheless, defendant continued to contact her.

Defendant also had a global positioning system (GPS) device installed in the wife's car. A GPS device uses global positioning satellites to track and record the location of the device and, therefore, the location of any object to which it is attached. To retrieve the recorded information, which is stored in a chip in the device, the chip is removed, and its memory is uploaded to a computer.

At trial, defendant testified that he had the device installed in her car to check on her whereabouts because of his concerns about the divorce proceedings and custody issues, but he had removed it as soon as he was notified of the restraining order.

Defendant was convicted and sentenced to concurrent terms of four years of intensive supervised probation for second degree arson and harassment by stalking. He was also convicted of violation of the restraining order

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

and domestic violence, but those convictions are not at issue in this appeal.

Defendant contends that the evidence is insufficient to support his convictions for second degree arson and harassment by stalking. We reject his contentions.

## I.

In considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Christian*, 632 P.2d 1031 (Colo.1981).

Further, in construing any statute, our goal is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the language of the statute itself, giving the words and phrases used their plain and ordinary meaning. *Vega v. People*, 893 P.2d 107 (Colo.1995); *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975)(statutory terms should be given the benefit of our common sense understanding). If the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules and statutory construction. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994).

However, if the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply commonly accepted rules of statutory construction to determine which alternative construction forwards the objective sought to be achieved by the legislation. *People v. Terry*, 791 P.2d 374 (Colo.1990). A policy declaration at the outset of the legislation may serve as a guide to legislative intent. *People v. Trujillo*, 983 P.2d 124 (Colo.App. 1999).

Finally, we presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not

---

§ 24–51–1105, C.R.S.2001.

adopt a construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Nara,* 964 P.2d 578 (Colo.App.1998).

## II.

■ Defendant contends that the evidence is insufficient to support his conviction for second degree arson for burning the wife's clothes because the prosecution did not prove that he burned the "property of another" as required by the statute. Relying on the definition of "marital property" under § 14-10-113(2), C.R.S.2001, he argues that he could not have burned the property of another because he and the victim, as husband and wife, owned her clothes jointly. Therefore, he argues, he cannot be convicted of burning his own property. We reject this contention.

One who knowingly sets fire to, burns, or causes to be burned any property of another without consent commits second degree arson. Section 18-4-103(1), C.R.S.2001.

Under § 18-4-101(3), C.R.S.2001, property is that of another if any person other than the defendant has a possessory or proprietary interest in such property.

Defendant does not dispute that the wife had such an interest in her clothes. Thus, the evidence presented at trial of the wife's ownership is sufficient to support defendant's conviction for second degree arson, and defendant's reliance on the definition in § 14-10-113(2) is misplaced. *See People v. Garcia, supra* ("property of another" is adequately defined by § 18-4-101(3)); *see also Vega v. People, supra.*

Moreover, the fact that the wife's clothes may have been acquired by her during the course of the marriage and, therefore, constituted a part of the parties' "marital property" under § 14-10-113(3), C.R.S.2001, does not aid defendant. The fact that personal property owned by one of the parties to a marriage may constitute "marital property" under this statute simply requires the dissolution court to consider the value of such property in distributing the parties' assets. It does not create an ownership interest in that property in the other spouse. *See In re Marriage of Balanson,* 25 P.3d 28 (Colo.2001)(dissolution court must determine whether item is marital property and, if so, consider its value in distributing the marital estate).

## III.

■ Defendant also contends that the evidence does not support the conviction for harassment by stalking. We do not agree.

Under § 18-9-111(4)(b)(III), C.R.S.2001, a person commits harassment by stalking if he or she

[r]epeatedly follows, approaches, contacts, *places under surveillance,* or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress. For purposes of this subparagraph (III), a victim need not show that he or she received professional treatment or counseling to show that he or she suffered serious emotional distress. (emphasis supplied)

### A.

Defendant first argues that the evidence is insufficient to support a finding beyond a reasonable doubt that he placed the wife "under surveillance" because he had no knowledge where she had been until he retrieved the data from the GPS device. He argues that, without *present* knowledge of her location he could not have placed her "under surveillance" within the meaning of § 18-9-111(4)(b)(III). In contrast, the People argue that "surveillance" may include alternative methods of acquiring information about a person's whereabouts and activities such as that used here. We agree with the People.

The legislative declaration of § 18-9-111(4), C.R.S.2001, is that:

[S]talking is a serious problem in this state and nationwide. ... The general assembly hereby recognizes the seriousness posed by stalking and adopts the provisions of this subsection (4) ... with the goal of encouraging and authorizing effective intervention before stalking can escalate into

behavior that has even more serious consequences.

We note, first, that stalking and harassment statutes of other states define "surveillance" as "remaining present outside [the person's] school, place of employment, vehicle, other place occupied by the person, or residence[,] other than the residence of the defendant." *See, e.g.,* Ark.Code Ann. § 5–71–208(a)(6) (2001); 720 Ill. Comp. Stat. 5/12–7.3(d) (2001). Colorado's statute, by contrast, has no requirement of physical presence, and therefore, we presume that, had the General Assembly intended to require the offender's immediate and physical presence, it would have included such a requirement. *See, e.g.,* Ark.Code Ann. § 5–71–208(a)(6).

The common meaning of "surveillance" is to keep a watch over someone or something. *Webster's Third New International Dictionary* 2302 (1968). "Surveillance" is also defined as the close observation of a person or place in the hope of gathering evidence. *Black's Law Dictionary* 1459 (7th ed.1999). Electronic devices such as the GPS device allow for precisely this kind of conduct.

Here, the GPS device simultaneously recorded the wife's movements as they were occurring. And, it preserved that information for defendant's use without the necessity of his concurrent physical presence. Indeed, as defendant testified, the device was installed for the purpose of maintaining a watch over the wife and gathering information about her activities. Defendant used that information to alert her that he was aware of where she went and what she did. We perceive no significant difference between gaining this type of personal information by physically following the wife and by using a device designed to achieve the same result. In either case, the motive to instill fear in his victim, by demonstrating that he had the ability to know where she was and what she was doing at any time, was accomplished.

Nor was the information obtained a long time after it was recorded. According to defendant's testimony, he had the device installed on February 4, 2000, and the chip removed on February 9 and 13, 2000, the first time only five days after its installation.

Moreover, this information was available to defendant at any time. Simply because he chose to retrieve the information a few days after it was recorded did not preclude him from accessing such information sooner.

■ Thus, we conclude that the phrase "under surveillance" includes electronic surveillance that records a person's whereabouts as that person moves from one location to another and allows the stalker to access that information either simultaneously or shortly thereafter. Such an interpretation furthers the General Assembly's intent that stalking behavior be stopped before it escalates into more serious conduct.

Here, the evidence presented established that defendant placed the wife under surveillance by using the GPS device to collect information concerning her activities. Such evidence is sufficient to establish defendant's violation of the pertinent statute.

### B.

Defendant also argues that he could not have "repeatedly" placed the victim under surveillance because the device was installed and removed only one time. We disagree.

"Repeatedly," as defined under § 18–9–111(4)(c)(IV), C.R.S.2001, means on more than one occasion. *See People ex rel. Van Meveren v. County Court,* 191 Colo. 201, 551 P.2d 716 (1976) ("repeatedly" is a word of common understanding, meaning simply more than one time).

Here, there was evidence that the chip from the GPS device was installed and removed more than once. Although defendant testified that he had it installed and removed only once, he also admitted that he downloaded information from the device on at least two occasions. In order to retrieve the information, the chip in the device would have had to have been removed and replaced.

Further, the device recorded the wife's movements on more than a single occasion. It "repeatedly" stored information about her movements, and defendant later reviewed this information. Thus, whether he reviewed this information only once or on several occasions, he gained information about the wife

on repeated occasions. This conduct, in our view, satisfies the requirements of the statute.

### C.

Lastly, defendant argues, but we disagree, that his conviction for harassment by stalking should be vacated because the prosecution failed to prove the element of the offense that the victim suffered serious emotional distress.

Section 180–9–111(4)(b)(III) does not require that the victim prove she obtained treatment or counseling in order to show that she suffered serious emotional distress.

Here, the wife testified that she suspected defendant was stalking her for over a month based on his comments to her. She stated that her concern about being watched caused her to take alternate routes to her destinations and to be cautious that no one was following her. Further, she testified that she was afraid and felt she was constantly being watched, and that these feelings made her uncomfortable and gave her stomach aches. She also stated that she had trouble falling asleep and would awake in the night with feelings of anxiety. Finally, the wife testified that she was so concerned for her safety at one point that she took a leave of absence from work to enter a safe house.

In addition, an officer called by the wife to check her car for tracking devices testified that she seemed "extremely upset."

Defendant argues that such feelings are a normal part of the stress of going through a divorce and not so extreme as to amount to serious emotional distress. However, the wife attributed these feelings and actions solely to her fears about being followed.

The record supports the finding that the wife suffered serious emotional distress. Thus, viewing the evidence as a whole in the light most favorable to the prosecution, we conclude that it is sufficient to support the conclusion by a reasonable fact finder that defendant was guilty of the offenses charged beyond a reasonable doubt. *See State v. Cooney,* 271 Mont. 42, 894 P.2d 303 (1995)(victim's testimony sufficient to support finding of emotional distress caused by stalking).

The judgment is affirmed.

Judge DAILEY and Judge STERNBERG * concur.