2014 COA 130

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Mark Steven BROWN, Defendant–Appellant.**

**Court of Appeals No. 12CA0090**

Colorado Court of Appeals, Div. I.

Announced October 9, 2014

As Modified on Denial of Rehearing December 18, 2014

La Plata County District Court No. 10CR507, Honorable David L. Dickenson, Judge

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Thomas R. Williamson, Durango, Colorado, for Defendant–Appellant

Opinion by JUDGE BERNARD

¶ 1 A jury convicted defendant, Mark Steven Brown, of two counts each of stalking, invasion of privacy, and unlawful sexual contact. He appeals the judgment of conviction. We reverse and remand for a new trial.

## I. Background

¶ 2 In September 2010, defendant asked a woman he knew if she wanted to "housesit" in his apartment for six months while he worked in South Korea. She agreed.

¶ 3 Before he left, and without the housesitter's knowledge, defendant set up motion-sensitive video cameras in the apartment's bedroom and living room. The housesitter discovered the cameras about twelve days after she moved in. She called the police.

¶ 4 The police determined that the cameras had made about 1500 short recordings. Many of the recordings showed the housesitter engaged in household activity. But some

of them showed her having sex with her boyfriend.

## II.   Analysis

### A.   Evidence of Uncharged Misconduct

¶ 5 Defendant contends that the trial court abused its discretion when it "admitted other act evidence of an unrelated sexual encounter involving another individual." We agree.

### 1.   Standard of Review and Legal Principles

¶ 6 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002). A court's erroneous decision to admit evidence of other acts under CRE 404(b) is subject to the nonconstitutional harmless error standard. *Yusem v. People*, 210 P.3d 458, 469 (Colo.2009). We will reverse a conviction if we conclude that there is a reasonable probability that a nonconstitutional error "contributed to [the] ... conviction by substantially influencing the verdict or impairing the fairness of the trial." *People v. Casias*, 2012 COA 117, ¶ 61, 312 P.3d 208. A "reasonable probability" in this context means "only a probability sufficient to undermine confidence in the outcome of the case." *Id.* at ¶ 63.

¶ 7 CRE 404(b) governs the admissibility of evidence of uncharged acts. It states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 8 (We note that the admission of evidence of prior episodes of unlawful sexual contact is also subject to section 16–10–301, C.R.S.2014. But we need not discuss that statute here because such evidence must also satisfy the four-part test found in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990), that courts use to analyze whether evidence of other acts is admissible under CRE 404(b). *See People v. Jones*, 2013 CO 59, ¶ 14, 311

P.3d 274; *People v. Underwood*, 53 P.3d 765, 769 (Colo.App.2002); *People v. Martinez*, 36 P.3d 154, 158–59 (Colo.App.2001). We conclude, for the reasons that we explain below, that the other act evidence in this case did not satisfy one part of the *Spoto* test.)

¶ 9 A court may admit evidence under CRE 404(b) only if it satisfies the four-part test established in *Spoto*. Those four steps are:

1. Does the other act evidence relate to a material fact?

2. Is the evidence logically relevant under CRE 401?

3. Is the logical relevance of the other act evidence independent of the impermissible inference that the crime was a product of the defendant's bad character?

4. Applying CRE 403, is the probative value of the evidence "substantially outweighed by the danger of unfair prejudice"?

*People v. Cousins*, 181 P.3d 365, 370 (Colo. App.2007).

¶ 10 In answering the fourth question, we must view the evidence as having the maximum probative value and the minimum prejudicial impact that a reasonable juror would give it. *Rath*, 44 P.3d at 1043.

¶ 11 "Evidence is unfairly prejudicial if it is unduly inflammatory or likely to prevent the jury from making a rational decision." *People v. Asberry*, 172 P.3d 927, 932–33 (Colo.App.2007). Evidence that has an "undue tendency to suggest a decision on an improper basis, .commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror," is unfairly prejudicial, and a court should exclude it. *People v. Brown*, 313 P.3d 608, 615 (Colo.App.2011)(internal quotation marks omitted); *see also Masters v. People*, 58 P.3d 979, 1001 (Colo.2002); *Cousins*, 181 P.3d at 370; *People v. James*, 117 P.3d 91, 93–94 (Colo.App.2004).

¶ 12 "Evidence of uncharged crimes has a distinct and unmistakable potential for unfair prejudice[.]" *People v. Fry*, 74 P.3d

360, 370 (Colo.App.2002). For example, "[t]here is a risk the jury will convict a defendant to punish him or her for past misconduct, or because the defendant is a bad person." *Cousins*, 181 P.3d at 369.

### 2. The Uncharged Act Evidence

¶ 13 Before trial, the prosecution filed a motion to introduce evidence under CRE 404(b). The motion stated that defendant had "been charged in this case with offenses involving unlawful sexual behavior." It then asserted that defendant "has previously committed acts of unlawful sexual behavior."

¶ 14 The prosecution's offer of proof alleged that a woman who had rented a room to defendant awoke one night to find him crouched near her bed. He was wearing only his underwear, he was watching her, and he was masturbating. The prosecution contended that this evidence was admissible to show (1) defendant's "required mental state," which was that he "acted knowingly when he engaged in voye[u]rism"; and (2) that defendant did not "accidentally" record the victim's actions.

¶ 15 Defendant objected. The trial court granted the motion in part, ruling that the woman's description of the events in her bedroom was admissible "on the issue of culpable mental state."

¶ 16 Before the woman testified at trial, the court gave the jury an instruction. The court stated that the jury was about to "hear evidence" that was "admissible only for . . . limited purpose[s]." The limited purposes were (1) "whether . . . defendant possessed the necessary culpable mental state for commission of the offenses charged" and (2) "absence of mistake." The court told the jury it could not consider the woman's testimony for any "other purpose."

¶ 17 The woman's trial testimony was significantly different from the prosecution's offer of proof. She stated that she awoke because defendant had touched *her*, and that "[h]e had his hand underneath the covers in [her] crotch." She added that "he was touching me, that's what woke me up." His touch caused her to "jump up" and to "scream."

¶ 18 On cross-examination, the woman emphatically denied telling the investigating officer that defendant had been masturbating, although that description of the events was contained in that officer's report. The investigating officer later testified that he might have misunderstood the woman's description of the events.

¶ 19 Defendant then asked for a mistrial, or, in the alternative, that the court strike the woman's testimony from the record. The trial court denied both motions.

### 3. Discussion

¶ 20 Although the prosecution had charged defendant with several crimes involving the housesitter, none of them involved physical contact. Indeed, he was not present when the cameras recorded her.

¶ 21 We conclude that the woman's trial testimony was inadmissible under the fourth *Spoto* step. Employing CRE 403, we conclude that the danger of unfair prejudice substantially outweighed the probative value of the woman's testimony.

¶ 22 The woman's description at trial of a sexual assault was qualitatively different, more severe, and more inflammatory than the evidence concerning the charged offenses. This description portrayed defendant as a would-be rapist, not simply as a voyeur. This difference created a substantial risk that "[t]he tail might well wag the dog . . . [because] [t]he uncharged act was . . . *much more serious* misconduct than the charged crime." Edward J. Imwinkelreid, *Uncharged Misconduct Evidence* § 8:24 (2013) (emphasis added); *see also United States v. Grimes*, 244 F.3d 375, 385 (5th Cir.2001) (defendant was charged with possessing pornographic but nonviolent material; prosecution introduced evidence of other acts of possession of material describing violent sexual abuse of children, which was found unduly prejudicial); *United States v. Tubol*, 191 F.3d 88, 95–96 (2d Cir.1999) (defendant used a "hoax" bomb in a bank robbery; the prosecution introduced evidence of another act in which the defendant planted a bomb in a house in Israel; the prejudice was "extraordinary"); *United States v. Midyett*, 603 F.Supp.2d 450, 456 (E.D.N.Y.2009) (other

act evidence is unduly prejudicial when it is more inflammatory, sensational, or disturbing than the charged offense); *cf. People v. Roberts*, 738 P.2d 380, 382 (Colo.App.1986) (where charged offense was relatively minor compared to other acts evidence admitted under section 16–10–301, C.R.S.2014, lack of limiting instruction was plain error); *People v. Martin*, 43 Colo.App. 44, 46, 602 P.2d 873, 874 (1979) (in prosecution for sexual assault on a child based on alleged acts of sexual intercourse with two of defendant's nieces, testimony that he had fathered the children of a third niece "revealed an unsavory situation of a highly prejudicial character" and warranted reversal).

¶ 23 Such evidence was likely to entice the jury to render a decision on an improper basis, such as sympathy for the housesitter or the woman, or hatred, contempt, retribution, or horror at defendant's alleged prior misconduct. We thus conclude under CRE 403 that the danger of unfair prejudice caused by the evidence substantially outweighed its probative value. *See United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009) ("[E]vidence of prior sexual offenses may ... pose significant dangers against which the [trial court] must diligently guard. Even if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis."); *United States v. Stout*, 509 F.3d 796, 802 (6th Cir.2007) ("The public regards sexually-based offenses as particularly heinous. Sex offenders are required to register in the communities in which they live because of the perceived danger that they will act in conformity with their prior bad acts."); *State v. Gaspar*, 982 A.2d 140, 149 (R.I.2009) ("We are satisfied that the implied equivalence of defendant's consensual and alleged nonconsensual sexual encounters ... was very likely to confuse the jury and invite an emotional response.").

¶ 24 We therefore conclude that the trial court abused its discretion when it admitted the evidence of the other act in which defendant touched the woman's crotch.

¶ 25 In reaching this conclusion, we make clear that we are not establishing a categorical rule that a trial court should never admit evidence of other acts that involve conduct that is more serious than the charged offense. Rather, the application of CRE 403 requires trial courts, on a case-by-case basis, to consider the contents of the pans on each of the weighing platforms of the scale to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence of other acts.

¶ 26 When considering the contents of the probative value pan, trial courts should consider the "the weight to be added to the prosecution's case by admitting the other-crime evidence." *Rath*, 44 P.3d at 1041. "The probative worth of any particular bit of evidence is affected by the scarcity or abundance of other evidence on the same point." *People v. Saiz*, 32 P.3d 441, 446 (Colo.2001). In other words, what is the "'marginal' or 'incremental' probative value of evidence relative to the other evidence in the case[?]." *See Rath*, 44 P.3d at 1041 (quoting *Old Chief v. United States*, 519 U.S. 172, 184–85, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). What is "the logical force of the evidence," and what is the prosecution's "need" for it "in light of other available evidence"? *See id.*

¶ 27 When considering the contents of the prejudice pan in cases such as this one, trial courts should ask whether the other act is "much more serious," *see* Imwinkelreid, *Uncharged Misconduct Evidence* § 8:24, "much more heinous," *see* 22 C. Wright & K. Graham, *Federal Practice and Procedure, Evidence* § 5250 (1978), or "more sensational or disturbing," *see United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir.1990), than the charged crime.

¶ 28 We further conclude that the error in this case was not harmless. The crux of the parties' dispute at trial was defendant's intent in setting up the video cameras. The prosecutor told the jury throughout the trial that defendant's intent was "to satisfy his perverse pleasures" and "to feed his perverse desires." Defendant countered that he set up the cameras to maintain the security of his apartment because he feared break-ins.

¶ 29 The prosecution introduced the woman's testimony on this central issue to establish defendant's intent and to prove that defendant had not mistakenly left the cameras running when he traveled to South Korea. The court instructed the jury that it could consider the woman's testimony on these two issues.

¶ 30 We conclude that there is a reasonable probability that the error contributed to defendant's convictions by substantially influencing the verdict or impairing the trial's fairness because the error concerned the core dispute at trial. *See Yusem*, 210 P.3d at 469. And because the trial court admitted the woman's testimony for the purposes of "the offenses charged," we reverse all the convictions that the jury entered, and we remand for a new trial on all those charges.

## B. Defendant's Expert Testimony

¶ 31 Trial courts have broad discretion to exclude expert testimony if it is unreliable or irrelevant, or if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. Ramirez*, 155 P.3d 371, 378 (Colo.2007). We will not disturb the trial court's ruling unless it is manifestly erroneous. *Id.* at 380.

¶ 32 All relevant evidence is admissible unless the United States or Colorado Constitutions, statutes, or court rules provide otherwise. CRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *accord Jones*, ¶ 17 (admissibility of evidence does not depend on a specific theory of relevance).

¶ 33 Here, defendant sought to admit testimony by a psychologist who performed a sex offense specific evaluation of defendant. The psychologist's report found that (1) defendant had a sexual interest consistent with the interests of the general adult male population of the United States and (2) defendant's interest in voyeurism was not significant enough to classify him as abnormal.

¶ 34 The trial court excluded this evidence because it was irrelevant and an attempt to "back-door" an opinion that defendant was not guilty of the charged offenses.

¶ 35 Evidence that defendant did not have a statistically significant interest in voyeurism would tend to make it less probable that he videotaped the victims for the purpose of sexual gratification, which is an element of the offense of unlawful sexual contact. The evidence was therefore relevant to that charge.

¶ 36 Further, at a pretrial hearing, defense counsel and the psychologist made clear that the psychologist would limit his testimony to the results of his evaluation. They added that the psychologist would not express an opinion about defendant's guilt or innocence of any charge.

¶ 37 We therefore conclude that the trial court abused its discretion when it excluded the psychologist's testimony concerning the charge of unlawful sexual contact on the ground that it was not relevant. On retrial, the prosecution may raise other objections to the admissibility of this evidence, and the trial court shall then rule on those objections.

## C. Sufficiency of the Evidence

¶ 38 We review a challenge to the sufficiency of evidence de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). We "must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt." *People v. Sullivan*, 53 P.3d 1181, 1182 (Colo. App.2002).

### 1. Invasion of Privacy and Unlawful Sexual Contact

¶ 39 We reject defendant's contention that the evidence was insufficient to support his convictions for invasion of privacy and unlawful sexual contact.

¶ 40 At the time of the offense, section 18–3–404(1.7) provided:

Any person who knowingly observes or takes a photograph of another person's intimate parts without that person's consent, in a situation where the person ob-

served has a reasonable expectation of privacy, for the purpose of the observer's own sexual gratification, commits unlawful sexual contact.

Ch. 171, sec. 20, § 18–3–404(1.7), 2000 Colo. Sess. Laws 700.

¶ 41 Section 18–7–801(1), C.R.S.2014, provides:

A person who knowingly observes or takes a photograph of another person's intimate parts ... without that person's consent, in a situation where the person observed or photographed has a reasonable expectation of privacy, commits criminal invasion of privacy.

¶ 42 " 'Intimate parts' means the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person." § 18–3–401(2), C.R.S.2014.

¶ 43 A person acts "knowingly" with respect to conduct described by a statute defining an offense when the person is aware that his or her conduct is of such nature. § 18–1–501(6), C.R.S.2014. A person acts "knowingly" with respect to a result of his or her conduct when the person is aware that his or her conduct is practically certain to cause the result. *Id.*

¶ 44 Here, defendant contends that the evidence was insufficient to establish that he "knowingly" took photographs of the victims' intimate parts because (1) he never saw any of the images that were recorded by the cameras and (2) the bedroom camera was largely directed at the bed and not the bathroom.

¶ 45 However, defendant concedes that he had directed the bedroom camera toward the bed. The camera was also set to record during the evening and nighttime hours, when an occupant of the bedroom would be most likely to disrobe or to engage in sexual activity. A motion-sensitive video camera set to record all evening and nighttime activity occurring in and around a bed during a six-month period is highly likely to record images of the intimate parts of persons using the bedroom. The evidence was thus sufficient to support a conclusion by a reasonable juror that (1) defendant was aware that he would capture such images when he config-

ured the cameras as he did and (2) defendant therefore knowingly took such photographs.

2. Stalking

¶ 46 Defendant contends that the evidence was insufficient to support his convictions for stalking because it did not establish that he placed the victims "under surveillance" within the meaning of section 18–3–602(1)(c), C.R.S.2014. We disagree because we conclude that the record contains sufficient evidence to support the convictions for stalking.

¶ 47 In construing a statute, our goal is to ascertain and give effect to the intent of the legislature. *People v. Owens,* 219 P.3d 379, 382 (Colo.App.2009). "To determine this intent, we look first to the plain and ordinary meaning of the language of the statute before consulting other principles of statutory construction." *Id.* We construe words and phrases in context according to their common usage. *Id.* If the statutory language is clear and unambiguous, we must interpret the statute as written without resort to other rules of statutory construction. *People v. Zapotocky,* 869 P.2d 1234, 1238 (Colo.1994).

¶ 48 As is relevant here, section 18–3–602(1)(c) provides that a person commits stalking if he or she knowingly "places [another person] under surveillance ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress."

¶ 49 "Surveillance" means "close watch kept over one or more persons" or "continuous observation of a person or area." *Webster's Third New International Dictionary* 2302 (2002). A defendant need not be physically present to conduct surveillance, and may do so by means of an electronic device that records information for later use. *See Sullivan,* 53 P.3d at 1184.

¶ 50 Here, defendant configured video cameras to observe and to record activity in a bedroom and a living room. Both cameras employed motion sensors that triggered recording whenever a person moved about the room. The cameras recorded about 1500 fifteen-second video clips in less than two

weeks before the housesitter discovered them. By using the video cameras in this manner, defendant kept a "close watch over" or "continuously observed" the victims. His use of the cameras therefore constituted surveillance.

¶ 51 Relying on *Sullivan*, defendant contends that his conduct did not constitute surveillance because he did not have access to the recorded information while he was out of the country. In *Sullivan*, the defendant installed a GPS device on the victim's car and first accessed the recorded data five days later. A division of this court held "that the phrase 'under surveillance' includes electronic surveillance that records a person's whereabouts as that person moves from one location to another and allows the stalker to access that information either simultaneously or shortly thereafter." *Id.*

¶ 52 However, the division in *Sullivan* did not hold that a defendant *must* access recorded information within a certain time period to establish "surveillance." And we presume that, had the legislature intended to include such a requirement, it would have done so. *See id.*

### D. Jury Instruction on Stalking

¶ 53 Defendant last contends that the trial court erred by allowing a constructive amendment to the charges of stalking. He submits that such an amendment occurred when it accepted an instruction that the prosecution had proposed. We will not address this issue because it is unlikely to arise on retrial. *See People v. Stephenson*, 56 P.3d 1112, 1121 (Colo.App.2001).

¶ 54 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE TAUBMAN and JUDGE NAVARRO concur.