24CA0593 Peo v Davidson 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0593
El Paso County District Court Nos. 22CR658 & 23CR1451
Honorable Diana K. May, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Edward Lewis Davidson, Jr.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for
Defendant-Appellant

¶ 1    A jury convicted defendant, Edward Lewis Davidson, Jr., of several counts of second degree burglary, criminal mischief, and theft.  He appeals his convictions, contending that the trial court erred (1) by permitting three detectives to testify that they had identified him as a suspect in their investigation and (2) by joining two of his cases.  We disagree with these contentions and therefore affirm.

## I.    Background

¶ 2    After a lengthy investigation, police identified Davidson as a suspect in a string of burglaries occurring between late 2021 and early 2022.[1]  During these burglaries, two or three people stole large quantities of cigarettes and vaping products from convenience stores.  Police identified Philip Owens, who was Davidson's roommate, and Derek Jones as the other two suspects.

¶ 3    Cameras in the stores captured video footage of the 2022 burglaries.  At least two men were visible in all the videos and a third was present in two of the videos.  Police first identified Owens because the suspects used a truck registered to him during at least

---

[1] El Paso County Case No. 22CR658 (2022 burglaries).

one of the burglaries. In the truck, police found several objects and clothing items that appeared similar to those in the surveillance videos. Owens also had a distinctive neck tattoo that was visible in at least one video. Police identified Jones because he did not cover his face during one of the burglaries.

¶ 4 After he was arrested, Jones called Davidson from jail, prompting police to investigate Davidson's participation in the burglaries. They learned that Davidson and Owens lived together in Davidson's house. Detectives later obtained a warrant directed to Davidson's cell phone service provider, which produced texts referencing "selling smokes" and "cartons for sale," and stating, "I was in the middle of a lick when you called," which a detective testified was slang for a theft or burglary.

¶ 5 The People eventually charged Davidson with second degree burglary, criminal mischief, theft, possession of burglary tools, and attempted second degree burglary (twelve counts total) for these crimes.

¶ 6 In early 2023, the police investigated another string of burglaries that were similar to the 2022 burglaries. Again, the perpetrators stole large quantities of cigarettes and vaping

2

products.  Police identified Davidson in the video surveillance from the stores based on common clothing — including a plaid jacket — as well as "physical characteristics and movements" and his "height and weight."  Police also determined that the same laundry bag used in the 2022 burglaries — a black bag with white cursive writing on it — was used in the 2023 burglaries.

¶ 7    After reviewing still photos obtained from the video of a body-worn camera during a traffic stop of Davidson, detectives identified Davidson as the third suspect.  At the time of the traffic stop, Davidson was driving a vehicle that was recorded on surveillance video leaving the scene of one of the burglaries.  Police found in the vehicle items of clothing and a black laundry bag that appeared similar to those seen in the 2023 surveillance videos.  The prosecution eventually filed a second case charging Davidson with twelve counts total of second degree burglary, criminal mischief, and theft for the 2023 burglaries.[2]

¶ 8    Prior to trial, despite Davidson's objection, the court consolidated the 2022 and 2023 cases but declined to consolidate a

---

[2] El Paso County Case No. 23CR1451.

separate case involving a burglary charge from 2021. At the consolidated trial, three detectives testified how and why their investigations led them to identify Davidson as a primary suspect in both the 2022 and 2023 burglaries. The jury convicted Davidson on five counts of second degree burglary, four counts of criminal mischief, and six counts of theft.

## II.    Analysis

### A.    Detective Identifications

¶ 9      Davidson contends that the trial court erred by permitting the three detectives to testify about their identification of Davidson as a suspect in both strings of burglaries. We disagree.

#### 1.    Standard of Review and Preservation

¶ 10     "[A] witness cannot testify that he believes that the defendant committed the crime at issue." *People v. Penn*, 2016 CO 32, ¶ 31. However, "[a] lay witness may testify about the identity of a person depicted in a surveillance video 'if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video] than is the jury." *People v. Grant*, 2021 COA 53, ¶ 64 (quoting *Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996)).

4

¶ 11    "We review evidentiary rulings, including those concerning the admission of lay witness testimony, for an abuse of discretion." *People v. Williams*, 2025 COA 26, ¶ 28. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *Id.* (citation omitted).

¶ 12    The parties agree that this issue was not raised in the trial court and therefore is unpreserved. *See People v. Ujaama*, 2012 COA 36, ¶ 37. So we review for plain error. *Id.* at ¶ 40. "Plain error assumes that the [trial] court should have intervened sua sponte because the error was so obvious" that no objection was required to bring it to the court's attention. *Id.* at ¶ 42 (citation omitted). To warrant reversal, plain error must not only be obvious, but also so prejudicial that it "undermine[s] the fundamental fairness of the trial." *Id.* at ¶ 43 (citation omitted).

¶ 13    Additional Facts

¶ 14    During trial, three detectives testified. Detective Rebecca Rannow was the first. She testified about her extensive investigation of the 2022 burglaries and a warrant she obtained relating to Davidson's phone. On redirect, the prosecutor asked her, "Was there any one single factor that you based your

conclusion on that this was Mr. Davidson committing these burglaries?"  Detective Rannow stated, "There was a mountain of different pieces of evidence that linked back to Mr. Davidson . . . being suspect number one in these cases."

¶ 15    Detective Monique Garcia testified that she was present during an interview of Davidson; she also recounted her extensive review of the burglary videos.  During her direct testimony, the following exchange occurred with the prosecutor:

> Q: And through the course of your combined investigation, did you develop a common suspect or suspects?
>
> A: Yes, sir.
>
> Q: Who were those individuals?
>
> A: It was Edward Davidson and Philip Owens.

¶ 16    Lastly, Detective Steven Collins testified that he primarily investigated the 2023 burglaries.  He stated that he initially did not have any suspects for the 2023 burglaries until he shared the surveillance footage with Garcia, who thought that one of the men in the videos looked like Davidson.  Collins testified about how police attempted to identify the individuals in the videos based on their distinguishing characteristics, including clothing, shoes,

movement, height, and shape. He also identified several objects in the surveillance videos that appeared similar to items subsequently found in Davidson's possession, such as the black laundry bag with white writing, a plaid jacket, and a pair of gloves that appeared in one or more of the videos. Detective Collins also testified that he obtained and reviewed photos of Davidson taken during the traffic stop.

## 2. Analysis

¶ 17 Davidson argues that the three detectives "usurped the jury's role" by identifying him as a primary suspect in both strings of burglaries. More specifically, in his opening brief he repeatedly asserts that the detectives "opined that Davidson was guilty," and because identification was the central issue in the case, the detectives' testimony undermined the fundamental fairness of the trial and therefore warrants reversal under the plain error standard.

¶ 18 As a threshold matter, we find no record support for Davidson's assertion in his opening brief that the detectives "all opined that . . . Davidson committed the crimes, and that the detectives know this simply because they know." Davidson did not cite any portion of the record to support this claim or similar

7

assertions that appear throughout the opening brief. Moreover, our review of the record reveals no testimony from any detective in which they opined that Davidson was guilty of any of the asserted crimes.

¶ 19 In his reply brief, Davidson implicitly concedes that the detectives did not offer such opinions of guilt: "Even if the detectives did not use the term 'guilty,' the testimony was unequivocal that Davidson was one of the men in the videos committing the crimes." But there is a wide gulf between identifying a person in a video and opining that the person is guilty of the charged crime. *See Gallegos v. People*, 403 P.2d 864, 873 (Colo. 1965) ("[T]o say [the witness] identified the defendants does not give rise to the conclusion that they were, therefore, guilty of the crime charged."); *Robinson*, 927 P.2d at 384. The first is permitted in appropriate circumstances; the second is improper. So we now turn to the properly framed issue: whether the trial court erred by admitting the detectives' lay testimony identifying Davidson as one of the suspects in the videos.

¶ 20 In evaluating the propriety of lay witness testimony, we first look to CRE 701, which authorizes a lay witness to provide "opinions or inferences which are (a) rationally based on the

perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As previously noted, a court may admit a lay opinion identifying a suspect in a video if there is some basis for concluding that the witness is more likely to correctly identify the suspect than the jury. *Id.*

¶ 21　Here, the detectives reviewed surveillance videos in which the perpetrators' facial features were either obstructed or not captured. They testified that Davidson was a primary suspect and described their investigative and identification processes. In doing so, the detectives explained their perceptions of the perpetrators' movements, builds, heights, and clothing, as well as the tools they used.

¶ 22　The detectives also testified that they identified Davidson as a primary suspect based on the videos and then verified that suspicion through other means:

- They reviewed still shots taken by a body-worn camera during Davidson's traffic stop.

- They determined the ownership of Owens's truck that was used in one of the burglaries.

- They learned that Davidson and Owens lived together and that Jones called Davidson from jail.

- They found that another car used to flee one of the burglaries was the car Davidson was driving at the time of a subsequent traffic stop.

- They found in that car several items of clothing and accessories that were similar to those appearing in the videos.

Detectives Rannow and Collins also testified to interviewing Davidson face-to-face.[3]

¶ 23    Rannow's testimony also discussed her investigation into the 2022 burglaries and that there were several pieces of evidence linking Davidson to the burglaries, not just her perception of the men in the videos.  Collins likewise discussed his investigation into the 2023 burglaries and finding several clothing items and tools in Davidson's possession that also resembled those in the videos.

---

[3] Detective Garcia was also present during that interview.

¶ 24 Davidson primarily takes issue with Garcia's testimony. He argues that Collins and Rannow both stated that Davidson was a suspect only because Garcia told them so. But even if Garcia first identified Davidson as a potential suspect in both strings of burglaries, both Rannow and Collins testified about the many other pieces of evidence that tied Davidson to these crimes. Therefore, their identification of Davidson as one of the suspects was not based solely on Garcia's identification.

¶ 25 The detectives' lay opinions were helpful to the jury. *See Robinson*, 927 P.2d at 384. The identifications were grounded in their intense study of the videos along with other evidence they collected across the multiple burglaries. Thus, we perceive no abuse of discretion — much less plain error — in the admission of their testimony explaining why Davidson was a primary suspect in these burglaries. *See id.*; *Gallegos*, 403 P.2d at 873.

## B. Joinder of Cases

¶ 26 Davidson next contends that the trial court erred by joining the two cases. Specifically, he reasons that the relevance of the two sets of burglaries to each other was minimal because they were separated by fifteen months and there were several aspects of the

2022 burglaries that were not present in the 2023 burglaries. Davidson argues that the perceived marginal relevance was substantially outweighed by the prejudice associated with joining the multiple offenses for a single trial, and therefore reversal is warranted. We are not persuaded.

### 1. Standard of Review and Applicable Law

¶ 27 "The decision to consolidate cases is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v. Gregg*, 298 P.3d 983, 985 (Colo. 2011). An abuse of discretion occurs when the joinder causes "actual prejudice as a result of the jury's inability to separate the facts and legal theories applicable to each offense. There is no prejudice where evidence of each [offense] would be admissible in separate trials." *Id.* at 985-86 (citation omitted).

¶ 28 Under Crim. P. 8(a)(2),

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Crim. P. 13 allows the court to join cases, subject to the provisions of Crim. P. 14. And Rule 14 provides that a defendant is entitled to a separate trial if the court determines that a joint trial would result in the prosecution presenting inadmissible, and prejudicial, evidence.

¶ 29 CRE 404(b)(1) provides that evidence of other acts is not admissible if it is used to prove the character of a person and that the person acted in conformity with that character on a particular occasion. However, evidence of prior bad acts can be admitted under CRE 404(b)(2) if the evidence is relevant to proving, among other things, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." When determining the admissibility of evidence of a defendant's prior crimes, wrongs, or acts under CRE 404(b), a court must apply the factors listed in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

¶ 30 *Spoto* provides a four-part test for determining whether evidence is admissible under CRE 404(b): (1) the evidence must relate to a material fact; (2) the evidence must be logically relevant; (3) the logical relevance must be "independent of the intermediate inference . . . that the defendant has a bad character" and therefore

is acting in conformity with that bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318.

¶ 31 With these standards in mind, we turn to the substance of the court's ruling to join the two cases.

## 2. Analysis

¶ 32 Several weeks before trial, the prosecution filed a motion to join the 2022 and 2023 burglary cases with another burglary case filed in 2022,[4] and it provided notice of its intent to introduce evidence of similar transactions. The court reviewed the motion and joined the 2022 and 2023 burglary cases, leaving the other 2022 case (charging a burglary of a private residence) to stand alone in a separate trial because the facts of that case were significantly different from those of the others.[5]

---

[4] El Paso County Case No. 22CR4289.

[5] In addition to being a burglary of a house rather than a convenience store, the trial court noted that the items taken in Case No. 22CR4289 included medications and personal items, not smoking- or vaping-related products.

14

¶ 33    In its analysis, the court noted that although the 2022 and 2023 burglaries occurred over a year apart, they shared enough common facts that they could be construed as part of a common scheme.  These commonalties included the time of day the burglaries occurred; how the perpetrators got into the stores; the type of goods stolen; the type of equipment used; and the masks, clothing, and physical similarities of the suspects in each burglary.  Based on these similarities, the court determined that there was a sufficient factual basis to establish a common scheme or plan, which fulfilled the requirements of joinder under Crim. P. 8(a)(2).  *See Bondsteel v. People*, 2019 CO 26, ¶¶ 41, 66 (joinder of charges was proper because "the two cases shared common evidence, and the investigations in the cases were intertwined").

¶ 34    The trial court also found that evidence of the respective cases would be cross-admissible in each case under CRE 404(b) and *Spoto* if the cases were tried separately.  This was so, the court reasoned, because the evidence was relevant to material facts — the common plan or scheme and the identity of Davidson as one of the perpetrators — and that relevance was not substantially outweighed

15

by any nonprobative prejudice associated with the evidence. *See* CRE 403.

¶ 35 Davidson argues that the trial court erred by joining the cases because the offenses were too attenuated in time to be considered part of a common plan or scheme. We discern no error in the trial court's conclusion to the contrary.

¶ 36 Two or more criminal cases may be joined together if the offense could have been joined in a single complaint, provided that the joinder does not prejudice the defendant. *See* Crim. P. 13; Crim. P. 14. Crim. P. 8(a)(2), in turn, allows two or more offenses to be charged in a single complaint if the offenses are of the same or similar character. Davidson argues that the offenses were not of the same or similar character, pointing to the passage of more than a year between the underlying crimes in the 2022 and 2023 burglaries. While we agree that the passage of time between the two series of burglaries was a relevant consideration, we conclude that the passage of fifteen months did not necessarily bar the admission of related crimes under CRE 404(b). *See Bondsteel*, ¶ 40 (assaults separated by six months); *see also People v. Janes*, 942 P.2d 1331, 1336 (Colo. App. 1997) (concluding, in a sexual assault

16

case, that the seven-year time difference between the crimes charged and the prior bad acts did not negate the relevance of evidence showing a common method of operation); *State v. Rutchik*, 341 N.W.2d 639, 646 (Wis. 1984) (evidence of the defendant's prior burglary, committed several years before the current charge, was relevant and admissible to show common scheme or plan).

¶ 37    Davidson is correct that these crime sprees were separated by more than a year.  There were also minor differences in the clothing worn by the perpetrators in some of the videos.  *See People v. Rath*, 44 P.3d 1033, 1042 (Colo. 2002) (noting that when other crime evidence is offered solely to prove that the defendant committed the charged offense, the distinctiveness and similarity of the crimes must be greater than when the prior crime is offered to prove one of the many other purposes set forth in CRE 404(b)).  But given the multiple similarities of the offenses, we conclude that the passage of fifteen months did not preclude joinder.

¶ 38    We next turn to Davidson's contention that the joinder was impermissible because the evidence of each offense would not have been admissible at separate trials.  Initially, we note that "joinder under Crim. P. 8(a)(2) does not always require the evidence of the

17

respective incidents to be cross-admissible were there to be separate trials." *Bondsteel*, ¶ 44. Indeed, if the cases are of the same or similar character, "joinder under Crim. P. 8(a)(2) is proper regardless of whether the evidence would be cross-admissible in separate trials." *Id.* In view of our prior conclusion that the 2022 burglaries and 2023 burglaries were of the same or similar character, the trial court's CRE 404(b) analysis is arguably irrelevant.

¶ 39    In any event, we discern no error in the trial court's analysis under CRE 404(b) and *Spoto*. The first three *Spoto* factors have to do with the relevance of the evidence. *Spoto*, 795 P.2d at 1318. The evidence of other burglaries — with similar methods of entry, times of day, tools used, and objects taken — is related because it illustrates a common plan or scheme and points towards the identity of Davidson as one of the burglars. The relevance of the collective burglaries was independent of the potential inference that Davidson simply had a bad character because the focus remained on the facts demonstrating *how* the other crimes were committed and by *whom*.

¶ 40    Nor was the evidence unduly prejudicial.  As the trial court noted, the common features of, and the methods used by, the burglars depicted in the videos far outweighed their dissimilarities. Certainly, the differences were not so numerous or substantial that their prejudicial impact substantially outweighed the probative value of their commonalities.  *See* CRE 403(b); *Rath*, 44 P.3d at 1043 ("Although there were obvious differences in the circumstances surrounding each transaction admitted in this prosecution, they shared a number of significant characteristics that evidenced a pattern of behavior . . . .").  Thus, we conclude that the noted differences went to the weight of the evidence, not its admissibility.

¶ 41    Moreover, the consolidated cases were not disparate in terms of the severity of the offenses committed.  For example, this is not a case in which a homicide charge was consolidated with an unrelated burglary charge.  The risk created by consolidating cases involving such disparate charges is that the jurors' passions may be inflamed by the more severe crime and thereby blur their objectivity in assessing the merits of the less severe unrelated charge.  *See People v. Brown*, 2014 COA 130M, ¶ 22 (noting that CRE 404(b)

evidence is "unduly prejudicial when it is more inflammatory, sensational, or disturbing than the charged offense" (citing *United States v. Midyett*, 603 F. Supp. 2d 450, 456 (E.D.N.Y. 2009))).  Here, in contrast, the consolidated cases, and the charges therein, were all burglaries.  Thus, no risk of potential unfair prejudice was created by the consolidation.

¶ 42    The trial court did not abuse its discretion by joining the two cases.

## III.    Disposition

¶ 43    The trial court's judgment is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.